# EXHIBIT A

ASSET SALE AND PURCHASE AGREEMENT

This Agreement (the "Agreement") is dated as of February ___, 2014, by and between Marc A. Pergament, as Chapter 7 Trustee of the Bankruptcy Estate of Joseph Yerushalmi ("Seller" or "Trustee"), maintaining a place of business at 400 Garden City Plaza, Garden City, New York 11530 and King Capital, Inc. ("Purchaser"), a Panamanian corporation, having a place of business at 2nd floor, MMG Tower, East 53rd Street, Marbella, Panama, Republic of Panama.

WHEREAS, on or about August 1, 2007, Joseph Yerushalmi (the "Debtor"), filed a petition for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. Section 101 et seq.) (the "Code"), in In re: Joseph Yerushalmi in the United States Bankruptcy Court for the Eastern District of New York (the "Court"); and

WHEREAS, on October 1, 2007, the Debtor's case was converted to a case under Chapter 7 of the Code and Marc A. Pergament was appointed Interim Trustee of the Debtor's Chapter 7 case and by operation of law, became the permanent Trustee; and

WHEREAS, Schedule B, Item 13 to the Debtor's Bankruptcy Petition described an ownership interest in "Netline Investments-1.4% Shareholder;" and

WHEREAS, upon information and belief, the Debtor's property described as "Netline Investments-1.4% Shareholder" in his Bankruptcy Petition equates to approximately 288 shares (the "Shares") of Netline Communications Technologies (NCT) Ltd. ("Netline"), an Israeli entity, which Shares the Debtor allegedly holds through a wholly owned entity, EnJoy Capital, LLC ("EnJoy"); and

WHEREAS, the Trustee desires to sell to the Purchaser, and the Purchaser desires to purchase from the Trustee, the Shares, subject to, and in accordance with, the terms, conditions and provisions hereof.

NOW, THEREFORE, in consideration of the mutual promises and the covenants and other agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, each intending to be contractually bound, hereby agree as follows, subject to the jurisdiction of the Court and the terms and conditions of the Approval Order (hereinafter defined):

1. Introductory Paragraph.

The introductory paragraphs hereinabove contained and the contents thereof are incorporated in this Agreement as if fully set forth herein at length, and shall constitute representations of the appropriate parties.

2. Definitions and Interpretations.

The following words and terms as used herein shall have the following meanings unless the context or use indicates another or different meaning or intent:

a. "Business Day" shall mean any day except a Saturday, Sunday or other day on which banks or savings and loan associations in New York State are obligated or authorized by law to close.

b. The terms "hereby," "hereof," "herein," "hereunder," and any similar term as used in this

Agreement refer to this Agreement, and the term "heretofore" shall mean before, and the term "hereafter" shall mean after, the date of this Agreement.

c. The words "include," "including," and "includes" shall be deemed to be followed by the words "without limitation."

d. The word "shall" is mandatory; the word "may" is permissive.

e. The terms defined in this Agreement shall include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender.

f. References herein to "Sections," "Exhibits" and "Schedules," without reference herein to a document, are to be designated sections, exhibits and schedules to this Agreement.

g. The words importing persons shall include natural persons, sole proprietorships, firms, associations, partnerships (including limited partnerships), joint ventures, trusts, associations, corporations, limited liability companies, and other legal entities or government (whether Federal, state, county, city, municipal, town, village, or otherwise, including any instrumentality, division, agency, body or department thereof).

h. Any reference in this Agreement, by name or number, to a government department, agency, statute, regulation, program, or form, shall include any successor or similar department, agency, statute, regulation, program, or form.

3. Sale and Purchase of Trustee's Assets.

a. Purchased Assets. On the terms and subject to the conditions set forth herein, at Closing, the Trustee shall sell, transfer, convey and assign to Purchaser, and Purchaser shall purchase and acquire from the Trustee, "AS IS" and "WHERE IS", without representation or warranty, all right, title and interest of the Trustee in and to the Shares, including the right to register EnJoy's stock in Netline under Purchaser's name or to its order (the "Purchased Assets").

b. Excluded Assets. The sale and purchase herein does not include any asset not specifically set forth in Section 3.a. hereof.

4. Purchase Price, Application, Apportionments, Etc.

a. Purchase Price. The purchase price is $90,000.00 (the "Purchase Price"), payable by Purchaser to Seller as follows:

i. $15,000.00 ("Contract Deposit") upon the execution of this Agreement payable by Purchaser by bank or certified check, subject to collection, payable to the order of the Trustee or by wire transfer of immediately available federal funds to the Trustee's account, receipt of which, subject to collection, is hereby acknowledged, which shall be held in trust in accordance with the provisions of paragraph 4.b. below;

ii. $75,000.00 (the "Balance") upon Closing, by unendorsed bank cashier's checks drawn on

a bank that is a member of the New York Clearing House Association and payable to the order of Seller or such persons as may be designated by Seller or by wire transfer of immediately available federal funds to the Trustee's account (which checks or federal funds are referred to together and alternatively as the "Bank Checks"); such Bank Checks shall be in such amounts, aggregating the Balance, as shall be designated by Seller. All other funds required to be paid by Purchaser under this Agreement shall be good certified check of Purchaser, or official check of any bank, savings bank, trust company, or savings and loan association organized and existing under the laws of the United States or of any of the states and maintaining a banking office in the State of New York, drawn on an account maintained in the State of New York, payable to the order of Seller or to such person as may be required by this Agreement.

b. Deposit In Trust. The Contract Deposit shall be deemed to have been made to Trustee by payment thereof to the Trustee, and shall be held in trust by the Trustee until the earlier of (i) Closing, at which time the Contract Deposit, together with the net income earned thereon, if any, shall be retained by the Trustee (the net income shall not be credited against the Purchase Price); (ii) ten (10) days after Purchaser shall provide notice to the Trustee that the Purchaser is entitled to a refund thereof, then, provided Trustee shall not have notified Purchaser within said ten (10) days that he disputes Purchaser's claims, the Trustee shall deliver the Contract Deposit, together with the net income earned thereon, if any, to Purchaser; (iii) ten (10) days after Trustee shall provide notice to Purchaser that Purchaser has failed to perform its obligations under this Agreement or Trustee is otherwise entitled to retain the Contract Deposit and the net income earned thereon, if any, then, provided Purchaser shall not have notified the Trustee within said ten (10) days that it disputes Trustee's claims, the Trustee shall retain the Contract Deposit, together with the net income earned thereon, if any; (iv) a court of competent jurisdiction's issuance of a judgment, order or decree directing the retention or delivery, as the case may be, of the Contract Deposit and the net income earned thereon, if any, in which event the Trustee shall retain or deliver, as the case may be, the Contract Deposit and the net income earned thereon, if any, in accordance with such judgment, order or decree.

c. Returned Contract Deposit Check. In the event the Contract Deposit check (or if more than one check is delivered, any one of the Contract Deposit checks) is not paid by the bank upon which the check is drawn, for any reason whatsoever, then, in addition to any other remedies available to Trustee, the Trustee shall have the absolute right to cancel this Agreement upon written notice to Purchaser.

d. Liquidated Damages. In the event of Purchaser's default hereunder, then, subject to the provisions of sub-paragraph b. of this Section 4, the Contract Deposit, together with the net income earned thereon, if any, shall be retained by the Trustee. The parties hereto acknowledge that damages to Trustee in the event of default by Purchaser are difficult to measure. Therefore, except with respect to those matters expressly provided to survive cancellation, termination or rescission of this Agreement, the retention of the Contract Deposit, together with the net interest earned thereon, if any, shall provide the sole remedy of the Trustee and shall be considered liquidated and final damages; upon payment thereof, there shall be no further liability on the part of the Trustee or Purchaser hereunder except with respect to those matters expressly provided to survive cancellation, termination or rescission of this Agreement.

e. Seller's Limited Liability. In the event of the default of Seller under this Agreement, the Purchaser's sole remedy shall be to cancel this Agreement, whereupon the Contract Deposit, together with the net income earned thereon, if any, shall be paid over to the Purchaser and there shall be no further liability on the part of Seller to the Purchaser or on the part of the Purchaser to Seller, except with

respect to those matters expressly provided to survive cancellation, rescission or termination of this Agreement. In the event of any other claim arising under, by virtue of, or in connection with or incidental to this Agreement, Seller, or any affiliate, agent, employee, attorney, accountant, or representative of Seller, shall not be under any personal liability in connection therewith. In no event shall Seller or any affiliate, agent, employee, attorney, accountant or representative of Seller, have or be subject to any personal liability on account of or resulting from such default or claim, including direct, indirect, general, special, compensatory, consequential, remote, punitive, foreseeable or unforeseeable damages, loss of profits or loss of benefit of bargain, nor shall any monetary judgment be entered against any of them. The provisions of this paragraph 4.e. shall survive Closing or the cancellation, termination or rescission of this Agreement.

    f.   Trustee's Capacity. The Purchaser acknowledges that Marc A. Pergament, as Trustee of the Chapter 7 Bankruptcy Estate of Joseph Yerushalmi, enters into this Contract of Sale solely in his capacity as Trustee and not individually. The Trustee shall have no obligation or liability whatsoever in his individual capacity under this Agreement. Any representations, warranties, covenants, undertakings and agreements made on the part of the Trustee, regardless of their form, are nevertheless made and are intended for the purposes of binding only the Trustee in his representative capacity. No personal liability or personal responsibility is assumed by, nor shall at any time be asserted or enforceable against, the Trustee individually on account of any undertaking or agreement in this Agreement, either express or implied, and all such personal liability, if any, is expressly waived and released by the Purchaser.

5. Condition of Purchased Assets.

Purchaser acknowledges that he has been afforded a full and complete opportunity to investigate the Purchased Assets and all matters or things relating thereto and is familiar with the condition thereof. Seller, or any person on Seller's behalf, including Seller's affiliates, attorneys, accountants, agents or employees, has not made, and does not make, any promises, representations or warranties, express or implied, oral or written, as to the condition of, or any other matter affecting, the Purchased Assets. The Purchased Assets shall be conveyed, and Purchaser shall take title to and possession of the Purchased Assets AS IS, WHERE IS, WITH ALL FAULTS AND WITHOUT REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, OF SELLER OF ANY KIND (ALL OF WHICH SELLER DISCLAIMS); NO WARRANTIES, WHETHER EXPRESS, IMPLIED OR STATUTORY, INCLUDING BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY, FITNESS FOR USE OR FITNESS FOR A PARTICULAR PURPOSE, WARRANTY OF TITLE TO ANY TANGIBLE OR INTANGIBLE ASSETS OR PROPERTY RIGHTS PURPORTED TO BE SOLD TO PURCHASER HEREIN, ARE GIVEN AND ALL SUCH OTHER WARRANTIES ARE HEREBY EXPRESSLY DISCLAIMED. Seller shall not be liable or bound by any verbal or written statements, representations, business broker set-ups, or information pertaining to the Purchased Assets furnished by any broker, agent, employee, servant or any other person, firm or corporation. Upon Closing, Purchaser shall be deemed to have waived, released and discharged any claims it has, might have or may have against Seller, or any of Seller's affiliates, officers, directors, shareholders, members, partners, agents, employees, attorneys or representatives, in connection with the Purchased Assets and all matters or things relating thereto. The provisions of this paragraph shall survive Closing or the cancellation, termination or rescission of this Agreement.

6.    Sale of Trustee's Assets Free of All Liens, Taxes & Encumbrances.

a. Purchaser acknowledges and understands that the sale contemplated by this Agreement will be made in accordance with the provisions of §§ 363 and 365 of the Bankruptcy Code with the Purchased Assets to be sold free and clear of all liens, claims, taxes and encumbrances of whatever kind or nature (the "Liens"), with such Liens, if any, if valid, to attach to the net proceeds of the Purchase Price, that is net of attorney's fees and expenses of the sale reflected in this Agreement.

b. The obligations of Trustee and Purchaser hereunder are contingent upon the entry of an order of the Court (the "Approval Order"), pursuant to §§ 363(b) and 363(f)(1), 363(f)(3), 363(m) and 365 and other applicable provisions of the Bankruptcy Code which (i) authorizes and approves the sale of the Purchased Assets pursuant to the terms of this Agreement; and (ii) which finds that the Purchaser has entered into this Agreement in "good faith" and is therefore entitled to the protections afforded a good faith Purchaser under section 363(m) of the Bankruptcy Code.

c. The Trustee shall make prompt application to the Court for the entry of the Approval Order, upon notice to all creditors of the Debtor's bankruptcy estate. The application to the Court shall expressly request approval of all of the terms and conditions of this Agreement including but not limited to a finding that the Purchaser is a "good faith purchaser" under section 363(m) of the Bankruptcy Code.

d. In the event that the Approval Order is not granted within sixty (60) days of the date hereof, then either the Trustee or the Purchaser may terminate this Agreement prior to Closing by notice to the other party to that effect, and the Contract Deposit, together with any interest thereon, if any, shall be refunded to the Purchaser and this Agreement shall be null and void and of no further force and effect except as to those matters that are expressly stated to survive cancellation, termination and rescission.

e. Purchaser will cooperate in good faith with the Trustee to secure the Approval Order, including, but not limited to, attending the hearing to consider the entry of the Approval Order (the "Sale Hearing") and, if necessary, testifying before the Court and providing documentary evidence as to Purchaser's financial wherewithal to perform the obligations of Buyer under this Agreement.

7. Terms and Conditions of Sale.

a. The Purchaser acknowledges and understands that the Trustee will seek Court approval of the terms and conditions of this Agreement, and, consistent with § 363 of the Bankruptcy Code, such approval will be sought by the Trustee subject to any higher or better offers that may be tendered to the Trustee and the Court at the Sale Hearing.

b. Furthermore, the terms and conditions of sale to govern the bidding at the Sale Hearing shall provide that in order to be considered by the Court and admissible on the date of the Sale Hearing, any competing offer ("Competing Offer") must satisfy the following terms and conditions: (i) a Competing Offer shall provide for a Purchase Price of at least $100,000.00 (the "Initial Bid"); (ii) the Competing Offer shall be substantially similar to the terms and conditions of this Agreement; (iii) a person making a Competing Offer ("Competing Offeror") must sign an Agreement agreeing to be bound by the terms and conditions of this Agreement; (iv) the Competing Offer shall not be contingent upon the receipt of financing necessary to its consummation, and the Competing Offeror

shall have demonstrated, to the sole satisfaction of the Trustee and the Court, evidence of its ability to conclude the transaction upon the terms and conditions of this Agreement, without delay; (v) the Competing Offer shall not be conditioned upon the outcome of unperformed due diligence by the Competing Offeror with respect to the Purchased Assets; (vi) the Competing Offeror shall provide, at or before the Sale Hearing, a certified or official bank check made payable to the Trustee in the sum of $15,000.00 representing the Contract Deposit under the terms of this Agreement; and (vii) in the case of any subsequent competing offer ("Subsequent Competing Offer") received from any party, which may include, without limitation, the Purchaser, bidding shall be in increments of $1,000.00.

8. Assumption of Appeal of Approval Order.

If any party appeals the Approval Order, the Purchaser shall defend the appeal of the Approval Order at the Purchaser's sole cost and expense unless the Purchaser notifies the Trustee in writing within five (5) business days after the filing of the Notice of Appeal of the Approval Order that the Purchaser will not assume the appeal (the "Opt-Out Notice"). In the event the Purchaser issues the Opt-Out Notice, subject to the Trustee's right to assume the defense of the appeal, by notice to that effect provided within five (5) days after issuance of the Opt-Out Notice, the Purchaser may rescind this Agreement whereupon the Contract Deposit shall be refunded to Purchaser and all further liability on the part of Seller shall cease and terminate and this Agreement shall be null and void and of no further force or effect except with respect to those matters expressly stated to survive cancellation, termination or rescission of this Agreement. In the event that the Trustee assumes the defense of the appeal, the Purchaser shall have no right to rescind this Agreement.

9. Closing.

    a. Closing Date. The closing of the sale and purchase of the Purchased Assets (the "Closing") shall take place on or before eleven (11) days after entry of the Approval Order (the "Closing Date"), at 11:00 a.m. at the offices of Weinberg, Gross & Pergament LLP or at such other place as mutually agreed upon by the parties hereto.

    b. Trustee's Deliveries. At Closing, Trustee shall deliver to Purchaser, Trustee's Stock Power and Bill of Sale in the form of Exhibit "A" annexed hereto and made a part hereof and any other conveyancing documents approved by Trustee or Trustee's attorneys, or as Trustee deems necessary, to transfer title to the Purchased Assets being sold, "AS IS", without representation or warranty, free and clear of all liens, encumbrances, security interests, interests of third parties and otherwise, except as otherwise provided herein.

    c. Purchaser's Deliveries. At Closing, Purchaser shall deliver to Trustee:

        i. The Balance by Bank Check payable to the order of the Trustee, as Trustee.

        ii. Such other and further documents, instruments and payments as may be prescribed by this Agreement.

    d. Taxes. At Closing, Purchaser shall pay to the Trustee all stamp taxes or sales and uses taxes, if any, payable on account of the sale of the Purchased Assets to Purchaser, whether levied upon Trustee or Purchaser. Purchaser shall indemnify and hold the Trustee harmless from and against all

stamp taxes and sales and use taxes, and any interest and penalties thereon, arising out of or as a consequence of the sale contemplated herein. The provisions of this paragraph shall survive Closing.

10. Representations and Warranties of Purchaser.

Purchaser represents and warrants to the Trustee, as of the date hereof and as of Closing, as follows:

a. Purchaser has full power and authority to execute and deliver this Agreement, to perform his obligations hereunder and to consummate the transactions contemplated.

b. Purchaser has duly taken all action necessary to authorize the execution, delivery and performance of this Agreement and any other instruments and agreements contemplated herein; and such execution, delivery and performance does not and will not constitute a default under or a violation of any agreement, order, award, judgment, decree, statute, law, rule, regulation or any other instrument to which Purchaser is a party or by which Purchaser or his property may be bound or may be subject. This Agreement constitutes the legal, valid and binding obligation of Purchaser enforceable against Purchaser in accordance with its terms.

c. There is no claim, action, suit, proceeding or investigation pending or, to the knowledge of Purchaser, threatened, against or involving Purchaser which questions the validity of this Agreement or seeks to prohibit, enjoin or otherwise challenge the transactions contemplated, and, to the actual knowledge of Purchaser, there is no basis for any such claim, action, suit, proceeding or governmental investigation.

d. No person has any rights or claims in the nature of brokerage or finder's fees with respect to the contemplated purchase.

The provisions of this paragraph 9 shall survive Closing.

11. Miscellaneous.

a. Notices. All notices and other communications required or permitted to be given pursuant to this Agreement shall be in writing, shall be deemed to have been given three (3) business days after being mailed by registered or certified mail, return receipt requested, on the date of delivery if by personal delivery with an acknowledgement of receipt therefor, or on the next business day after delivery of such notice to a nationally recognized overnight carrier for next day delivery, and shall be sent to the parties at the following addresses (or such other address for a party as shall be specified by notice given pursuant to this paragraph):

If to Trustee:                             Marc A. Pergament, Esq.
                                           Weinberg, Gross & Pergament LLP
                                           400 Garden City Plaza
                                           Garden City, NY 11530
                                           Phone: 516.877.2424
                                           Facsimile:516.877.2460

| | |
|---|---|
| with a copy to: | David E. Miller, Esq.<br>Weinberg, Gross & Pergament LLP<br>400 Garden City Plaza<br>Garden City, NY 11530<br>Phone: 516.877.2424<br>Facsimile: 516.877.2460 |
| If to Purchaser: | King Capital, Inc.<br>Yael Ben Dov, Adv.<br>10 Shtruk Street, Tel Aviv, Israel<br>Attn.:<br>Phone: (972) 3-7581008<br>Facsimile: (972) 3-7581008 |
| with a copy to: | Remko DeJong, Esq.<br>Muchnick, Golieb & Golieb, P.C.<br>200 Park Avenue South<br>New York, New York 10003<br>Phone: (212) 315-5575<br>Facsimile: (212) 977-5133 |

b. <u>Notices By or To Attorneys</u>. The parties hereby appoint their respective counsel listed above attorneys-in-fact for the purpose of the service or acceptance of any notice required or permitted hereunder or for the purpose of extending in writing any time periods provided in this Agreement.

c. <u>Expenses</u>. Except as otherwise expressly provided in this Agreement, each of the parties shall pay their own expenses (including the fees and expenses of the agents, representatives, counsel and accountants), incidental to the preparation and consummation of this Agreement.

d. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement among the parties with respect to the subject matter contained herein and supersedes all prior agreements and understandings, oral or written, with respect to the subject matter contained herein, provided, however, nothing herein shall be construed to limit any rights or responsibilities arising under any other agreements executed simultaneously herewith or hereafter. This Agreement may not be amended, modified, or terminated except by writing executed by each of the parties to be charged therewith.

e. <u>Governing Law, Jurisdiction</u>. This Agreement shall be construed and enforced in accordance with the federal laws of the United States and the internal laws of the State of New York without regard to principles of the conflict of state laws. Any dispute arising in connection with this Agreement shall be adjudicated in the United States Bankruptcy Court, Eastern District of New York. The parties hereto consent to the in personal jurisdiction of such court. The parties hereby waive the right to trial by jury in any action or proceeding arising under or in connection with this Agreement. The provisions of this sub-paragraph f. shall survive Closing or the cancellation, termination or rescission of this Agreement.

f. <u>Partial Invalidity</u>. In case any provision of this Agreement should be held to be contrary to,

or invalid under, the law of any country, state or other jurisdiction, such illegality or invalidity, shall not affect in any way any other provisions hereof, all of which shall continue, nevertheless, in full force and effect in any country, state or jurisdiction in which such provision is legal and valid.

    g.  Waivers.  All or any part of any provision of this Agreement may be waived in writing by the other parties hereto.  The failure to insist upon the strict performance of all or any part of any provision hereof, or to seek remedies for a default or breach in connection therewith, shall not be construed as a waiver.  The waiver of all or any part of any provision shall not affect or alter this Agreement or all or any part of any other provision hereof, nor shall it render unnecessary consent to, or approval of, any subsequent similar act.

    h.  Remedies.  No remedy herein conferred upon or reserved to a party is intended to be exclusive of any other available remedy, but each and every such remedy shall be cumulative and in addition to every other remedy given under this Agreement or in connection with this Agreement and now or hereafter existing at law or in equity

    i.  Assignment.  This Agreement may not be assigned by any party hereto without the written consent of all parties hereto; any purported assignment in contravention of the foregoing shall be without force or effect.

    j.  Successors and Assigns.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

    k.  Third Party Beneficiaries.  Except as expressly provided herein, each party hereto intends that this Agreement shall not benefit or create any right or cause of action in or on behalf of any

person other than the parties hereto.

l. **Captions**. The captions of this Agreement are for convenience and reference only and in no way limit the scope or interpretation of this Agreement or any provision thereof.

m. **Counterparts**. This Agreement may be executed in two or more counterparts and by the different parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all the counterparts shall together shall constitute one and the same document.

n. **Drafting**. No party hereto shall be deemed to be the drafter of this Agreement and in the event this Agreement is ever construed by a court of law, such court shall not construe this Agreement or any provision hereof against any party as the drafter of the Agreement, all parties hereto acknowledging that all parties have contributed substantially and materially to the preparation of this Agreement.

o. **Further Assurances**. Trustee and Purchaser shall, without cost to the others, execute and deliver to any of the other parties to this Agreement any and all documents in addition to those expressly provided for herein that may be necessary or appropriate to effectuate the provisions of this Agreement, whether before, at, or after Closing. The provisions of this paragraph shall survive Closing.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the day and date first above written.

_____
Marc A. Pergament,
as Chapter 7 Trustee of the
Bankruptcy Estate of Joseph Yerushalmi

King Capital, Inc.

By: _____

EXHIBIT "A"

TRUSTEE'S STOCK POWER & BILL OF SALE

**KNOW ALL MEN BY THESE PRESENTS, THAT** Marc A. Pergament, as Chapter 7 Trustee of the Bankruptcy Estate of Joseph Yerushalmi, whose address is 400 Garden City Plaza, Garden City, New York 11530 (herein referred to as the "Assignor"), by virtue of the powers and authorities vested in him by virtue of the Order of the Bankruptcy Court (Grossman, J.) dated _____, 2014, and by the statutes and laws in such cases made and provided, for and in consideration of the sum of $90,000.00 paid to the Assignor, at or before the ensealing and delivery of these presents by King Capital, Inc., whose address is 2nd floor, MMG Tower, East 53rd Street, Marbella, Panama, Republic of Panama (herein referred to as the "Assignee"), and for other good and valuable consideration, the receipt of which is hereby acknowledged, has bargained and sold, and hereby sells and/or transfers and/or sets over and/or assigns to the Assignee all right, title and interest of the Assignor and of the Bankruptcy Estate of Joseph Yerushalmi (the "Debtor") through its holdings in EnJoy Capital, LLC in and to Netline Communications Technologies (NCT) Ltd, "AS IS," WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND, Assignor does hereby irrevocably constitute and appoint the Assignee attorney to transfer the interest on the books of Netline Communications Technologies (NCT) Ltd. to its name or to its order, with full power of substitution in the premises.

TO HAVE AND TO HOLD the same unto the Assignee, forever.

**IN WITNESS WHEREOF,** the Assignor has signed and sealed these presents this _____ day of _____, 2014.

_____
MARC A. PERGAMENT, as
Chapter 7 Trustee of the Bankruptcy Estate of
Joseph Yerushalmi

STATE OF NEW YORK  )
                    ) SS:
COUNTY OF NASSAU    )

On the _____ day of _____, in the year 2014, before me, the undersigned, personally appeared MARC A. PERGAMENT, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public