# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:                                                              Chapter 7

JOSEPH YERUSHALMI,                                   Case No. 807-72816-478

                         Debtor.
-----------------------------------------------------------X

### AFFIDAVIT OF JOSEPH YERUSHALMI
### IN OPPOSITION TO TRUSTEE'S MOTION

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NASSAU       )

JOSEPH YERUSHALMI, being duly sworn, deposes and says:

1. I am the debtor herein. This affidavit is respectfully submitted in opposition to the Chapter 7 Trustee's (the "Trustee") motion to sell an <u>unspecified</u> number of shares of Netline Communications Technologies Ltd., a company formed under the laws of Israel, ("Netline") for a patently <u>insufficient</u> price, to King Capital Inc. an offshore Panamanian company, ("King Capital") without disclosing who stands behind it . The Trustee failed to address these issues when these issues were raised in correspondence between the Trustee and my counsel months before the instant motion was made by the Trustee. See the McGowan Aff. Most disturbing perhaps, is the Trustee's abject failure to disclose to this Court that even if the Netline shares were under the Trustee's control, the proposed sale of Netline shares that the Trustee wishes this Court to authorize blatantly violates the Netline by-laws (Articles of Association) and the vested rights of Netline's other shareholders to purchase the shares under their Right of First Offer.

2. In his motion, the Trustee does not specify the amount of shares in Netline that he believes are owned by me ("through Enjoy" – in his words). In the past, however, the Trustee has indicated that he seeks to sell shares in Netline that are owned by the Yerushalmi Family Trust

1

590605-1

(which was established on July 31, 1989) ("YFT"). Neither the YFT nor its assets are part of my estate.

3. As the Court will note in the correspondence attached to my counsel's accompanying affidavit, the Trustee sent a letter to my counsel dated May 25, 2012 stating that the Trustee had received a "proposal" from King Capital Inc. to purchase "418 shares[1] of the stock of Netline . . . for $150,000.00." The Trustee hid the fact that he had already signed a contract of sale with King Capital Inc. almost one month earlier on April 27, 2012. This contract did not specify the amount of shares in Netline that were to be purchased by King Capital Inc. thereunder. Compare Ex. "1" to McGowan Aff. to Exhibit "A" to the Trustee's motion.

4. As noted in my counsel's response dated May 31, 2012, Mr. Pergament was requested to address: (i) whether the shares that King Capital Inc. proposed to buy were owned in whole or part by the YFT and thus could not be sold by the Trustee; (ii) what percentage of the shares of Netline did this proposed sale represent. Two years ago 2.75% of the shares of Netline had been sold for close to $450,000 (since that time Netline has been doing well financially, and thus the shares are worth even more today) and (iii) why was the Trustee even trying to sell any asset at this time given that the State Court had already substantially reduced the amount owed by me and it was anticipated that the debt would be reduced even further when it issues its decision on the remaining issue in that case. See Id. at Ex. "2".

5. Instead of addressing these issues, the Trustee asked that documents be produced showing that I did not own the shares that he wanted to sell. See Ex. "3" to McGowan Aff.

---

[1] It appears that the Trustee made no effort to verify the number of Netline shares that he proposes to sell. It cannot be disputed that the number of Netline shares held under the name of Enjoy are 962 shares. See Exhibit "6". 50% of the 962 shares were held for Oxford trust. See deposition of Mr. Oded E'dan. Therefore the remaining shares are 481 and not 418, as the Mr. Pergament states in his motion.

2

590605-1

6. As noted in my counsel's reply, it is the Trustee's burden to demonstrate that the shares in Netline that King Capital Inc. proposed to buy were actually owned by me (which he cannot do) in order for him to pursue a sale of same. The Trustee was asked specifically "[d]o you know whether the shares in your possession are owned entirely by the Debtor or do you not know . . .". See Id. at Ex. "4".

7. **The Trustee did not respond to this letter and, instead, filed the instant motion two months later.** It is patent that the Trustee did not respond to this inquiry because he either does not know (or care) how many shares in Netline are actually owned by me ("through Enjoy") and how many shares are owned by the YFT, or he is colluding with the shadowy offshore Panamanian entity known as King Capital Inc. to mislead this Court by seeking an order approving the sale of the Netline shares which are not owned by the Debtor.

8. I believe that the latter scenario is more likely given that the agreement the Trustee signed with King Capital Inc. gives it "the right to register Enjoy's stock in Netline under [King Capital's] name or to its order" without specifying exactly what amount of Netline shares it relates to. See Ex. "A" to Trustee's Motion at para. 3(a).

9. Most importantly, the Trustee failed to inform this Court that his proposed sale is in violation of Netline's by-laws, relating to the transfer and/or sale of shares (section 19), and the vested rights of its other shareholders to their right of first Offer See Exhibit "7". In addition, it also breaches Israeli law, the law under which Netline has been incorporated and governed.

10. Given the latter contractual right and additionally armed with the proposed order submitted by the Trustee for this Court to sign that would bar anyone claiming an "interest" in the "Assets enumerated in the Asset Sale and Purchase Agreement to King Capital, Inc." from asserting their interest against the unspecified amount of Netline stock that is being sold by the

3

590605-1

Trustee, to King Capital. On its part, King Capital, based on this court's decision may register the Netline stock owned by the YFT as its stock, and thus deprive the other shareholders rights to the shares as well as the YFT. See Proposed Order annexed to the Trustee's motion at paras. 3 and 1.

11. Section 19 of Exhibit "7" clearly shows that Mr. Pergament's and King Capital's attempt to transfer Netline shares breaches Netline's obligations to its shareholders, and Netline's shareholders right of first offer. Netline and its shareholders are necessary parties to this hearing, and should receive personal notice by Mr. Pergament. Apparently Mr. Pergament's disregard of the third party rights to the Netline shares is a gross mistake, unless it was done intentionally.

12. The Court should also inquire as to why the Trustee did not specify the number of shares in Netline that he thinks I own "through Enjoy." Mr. Pergament does not deny the following: (i) receiving the documents relating to Enjoy when my records were seized on his behalf in October 2007 shortly after his appointment as trustee; and (ii) that he has deposed Mr. Oded E'dan, the former trustee of the YFT from 1989 through 2003 on the topic of its ownership of Enjoy (which in turn owned Netline shares).

13. In early 2000, Mr. E'Dan was involved in the purchase of 962 Netline shares via Enjoy, which constituted 5.5% of the total Netline shares, for the price $312 per share. See Exhibit "5". Mr. E'Dan testified that according to his best memory, the ownership interest in Enjoy (through which the Netline shares are claimed by the Trustee) was equally split between the unrelated Oxford Trust and the YFT. See the true copy of the relevant portion of Mr. E'Dan's testimony annexed hereto as Exhibit "8".

14. Not coincidently Oxford Trust's trustee is Mr. Howard Muchnik, whose office is now representing King Capital in the Trustee's proposed transaction. Interestingly, less than two

years ago, Mr. Muchnik, as trustee of Oxford Trust, sold Oxford Trust's 481 shares in Netline for close to $450,000. Simple arithmetic demonstrates that Pergament is willing to sell the Netline shares for approximately one third of the price that Muchnik received for the same number of shares[2]. See Exhibit "9" Oded E'Dan email to Avishay Levanovsky, the current YFT trustee (which includes my translation of this email which is in Hebrew) and see Exhibit "10" indicating the price per share of the 2010 Oxford Trust transaction with Netline.

15. The Trustee also does not deny: (i) that he served a subpoena upon Netline (and thus presumably received information from it as to the ownership of any shares he intends to sell); and (ii) that, as both the schedule to my bankruptcy petition and my counsel disclosed to the Trustee, it has been my recollection that I owned approximately 1.5% of the Netline shares (through Enjoy) with the YFT owning another approximately 1% through the defunct entity known as Enjoy - - all as set forth in my counsel's letter to the Trustee dated February 28, 2012 with the attachments annexed thereto. See Ex. "5" to the McGowan Aff. **The Trustee never responded to this letter nor disputed the facts set therein.**

16. Although I believe that I do own an approximately 1.5% interest in Netline "through Enjoy", I note that both Mr. E'Dan, the former YFT trustee who sat on the Board of Directors of Netline, and Mr. Levanovsky, the current trustee of the YFT, contend that the YFT owns that 1.5% interest along with the additional 1% that I concede it owns. Mr. Levanovsky contends that as a result of discussions he had in 2010 with Netline and an exchange of

---

[2] Howard Muchnik also represented LSL Biotechnology Inc, ("LSL") and its shareholders, including Oxford Trust, in the purchase of the Debtor's 25.5% shares interest in LSL for an outrageously low price. Also, in this case, this price was approximately 1/5th of the agreed upon price for such sale under LSL's by-laws and/or LSL's shareholder agreement. Not surprisingly, shortly after Muchnick's purchase of the Debtor's shares in LSL, those shares were sold to a third party for approximately 5 times more than what Mr. Pergament sold them to him for.

correspondence with Netline and Mr. E'dan, the YFT owns the entire 481 shares in Netline; including the 1.5% portion that I am under the belief that belongs to me "through Enjoy".

17. Even if the selling shareholder complies with this requirement, Netline still has the discretion to refuse to approve the transfer of the stock if it believes that the transfer of the shares is adverse to Netline's interest. See Id. at para. 19(e). Among other things, the Trustee will have to address Israeli law applicable to such a right since Netline is an Israeli corporation and governed by Israeli law, pursuant to which Netline Articles of Association, including paragraph 19 have been made.

18. I am an Israeli attorney (as well as a NY attorney). This Court (Judge Trust) accepted me as an Israeli attorney to represent domestic and Israeli entities in a bankruptcy case relating to Israeli corporate and bankruptcy issues. I am familiar with the issues of shareholders' rights under the company's Articles of Association, whether they are the right of first refusal, or the right of first offer. As such, I am familiar with the Israeli case law and treatises regarding the validity and enforceability of such rights under Israeli corporate law.

19. This provides yet another legally independent reason why the Trustee's motion must be denied.

20. Even if the Court could ignore all of the foregoing reasons why the Trustee's motion must be denied, it cannot ignore the fact that the Trustee's motion does not provide the Court with the documented information it needs to determine whether the value received for whatever amount of stock the Trustee thinks he is selling is sufficient.

21. The Netline investment made in early 2000 in purchasing 481 shares for $150,000, was a high risk investment, because Netline was then a high risk technology startup.

Since then Netline has developed sophisticated jamming and anti-terror equipment and is considered to be a worldwide leader in this field.

22. The fact that in 2010 the share price was tripled, despite the fact that the company was not yet traded, is evidence of its commercial success. Since 2010, Netline continued to develop cutting-edge jamming products in various fields, which are utilized in the war on terror worldwide.

23. The Trustee's request to sell the shares for the same price, for what was paid for the shares 12 years ago, without any explanation should be rejected.

24. In sum, I believe that the Trustee's proposal to sell Netline's shares for $150,000 should be rejected until a thorough investigation is conducted as to whether those shares can legally be sold by the Trustee to King Capital, and whether the Trustee is giving away the shares for a small portion of their value. In addition, the Court must find whether necessary third-parties who have an interest in the sale should be sent personal notice to enable them to participate.

_____
Joseph Yerushalmi

Sworn to before me this 4th day
of September, 2012.

_____
Notary Public

THOMAS J. McGOWAN
Notary Public, State of New York
No. 52-4863202
Qualified in Suffolk County
Commission Expires June 2, 10   7/24/14