# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:                                    Chapter 7

JOSEPH YERUSHALMI,                        Case No. 807-72816-478

                          Debtor.
---------------------------------------------------------X

## AFFIDAVIT OF THOMAS J. McGOWAN
## IN OPPOSITION TO TRUSTEE'S MOTION

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF NASSAU      )

THOMAS J. McGOWAN, being duly sworn, deposes and says:

1.     I am a member of Meltzer, Lippe, Goldstein & Breitstone, LLP, attorneys for the
debtor herein. This affidavit is respectfully submitted in opposition to the Chapter 7 Trustee's
(the "Trustee") motion to sell the Debtor's alleged interest in an unspecified number of shares of
Netline Communications Technologies Ltd. ("Netline") for a patently insufficient price.

2.     As more fully set forth in the accompanying affidavit of Joseph Yerushalmi, the
Trustee seeks authorization from this Court to sell the Debtor's alleged interest in Netline that
the Debtor owns "through Enjoy". The Debtor is alleged to have held a membership interest in
Enjoy Capital, LLC ("Enjoy") that in turn owned shares in Netline. The Trustee did not specify
in his motion the amount of shares he is seeking to sell and has failed completely to produce any
evidence that the Debtor owns whatever amount of shares in Netline that he is seeking to sell.

3.     It is not surprising that the Trustee has failed to produce any evidence that the
Debtor owns any of the shares that he seeks authority to sell in his motion papers since he has
ignored my repeated inquiries as to this issue and has been less than forthright as to the fact that
he had already signed a contract with King Capital Inc., a shadowy Panamanian corporation (and

1

590124-1

the undersigned and this Court are familiar with such corporations), before asking for the Debtor's help in marketing the sale of Netline stock. In particular, the Court will note that the Trustee sent a letter to me dated May 25, 2012 stating that he had received a "proposal" from King Capital Inc. to purchase "418 shares[1] of the stock of Netline . . . for $150,000.00." The Trustee hid the fact that he had already signed a contract of sale with King Capital Inc. almost one month earlier on April 27, 2012. The contract signed by the Trustee, in contrast to his letter to me, does not specify the amount of shares in Netline that are proposed to be purchased by King Capital Inc. thereunder. Compare the true copy of the Trustee's May 25, 2012 letter annexed hereto as Ex. "1" to Exhibit "A" to the Trustee's motion.

5.    As noted in my response dated May 31, 2012, the Trustee was requested to address: (i) whether the shares that King Capital Inc. proposed to buy were owned in whole or part by the Yerushalmi Family Trust and thus could not be sold by the Trustee; (ii) what percentage of the shares of Netline did this proposed sale represent since 2.75% of the shares of Netline had been sold for $450,000 approximately two years earlier with Netline doing well financially since then with the shares therefore worth even more today and (iii) why was the Trustee even trying to sell any asset at this time given that the State Court had already substantially reduced the amount owed by me and it was anticipated that the debt would be reduced even further when it issues its decision on the remaining issue in that case. See the true copy of my May 31, 2012 letter annexed hereto as Ex. "2".

---

[1]    I and the Debtor believe that the Trustee is wrong and that the number of shares are 481 and not 418 shares since the former amount represents a 2.75% interest in Netline. See the accompanying affidavit of Joseph Yerushalmi.

2

6.      Instead of addressing these issues, the Trustee asked that documents be produced showing that the Debtor did not own the shares that he wanted to sell. See the true copy of the Trustee's letter dated June 1, 2012 but emailed on June 4th annexed hereto as Ex. "3".

7.      As noted in my reply, it is the Trustee's burden to demonstrate that the shares in Netline that King Capital Inc. proposed to buy were actually owned by the Debtor (which he has not done) in order for him to pursue a sale of same. The Trustee was asked specifically "[d]o you know whether the shares in your possession are owned entirely by the Debtor or do you not know . . .". See the true copy of my June 4, 2012 letter annexed hereto as Ex. "4".

8.      **The Trustee did not respond to this letter and, instead, filed the instant motion two months later.**

9.      Since the Trustee can only sell assets owned by the Debtor, and he has failed to commence the adversary proceeding mandated by the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 7001(2) to determine whether the shares he seeks to sell in Netline are property of the estate pursuant to 11 U.S.C. Section 541, his motion must be denied on this ground alone under well settled law. See, e.g., In re Hearthside Baking Co., Inc., 397 B.R. 899, 902 (Bankr. N.D. Ill. 2008)(holding that a determination of whether property was property of the estate, and hence subject to sale pursuant to 11 U.S.C. Section 363, could only be obtained through an adversary proceeding); see also In re Silver Beach, LLC, 2009 WL 7809002 (B.A.P. 9th Cir. 2009)("Section 363(b)(1) provides that '[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . .' 11 U.S.C. Section 363(b)(1). **Implicit within the statutory grant of authority to sell property under section 363(b), is the requirement that the estate actually have an interest in the property to be sold. For that reason, a bankruptcy court may not allow the sale of property as**

3

'property of the estate' without first determining whether the debtor in fact owns the property")(emphasis added); In re Whitehall Jewelers Holdings, Inc., 2008 WL 2951974 (Bankr. D. Del. 2008)("A bankruptcy court may not allow the sale of property as 'property of the estate' without first determining whether property is property of the estate. . . . **Moreover, the Court cannot determine whether [property proposed to be sold] are property of the estate through a contested matter, such as a sale motion under Section 363. Federal Rule of Bankruptcy Procedure 7001(2) requires that an adversary proceeding be commenced to 'determine the validity, priority, of extent of (an) interest in property'**")(emphasis added).

10.     It is patent that the Trustee did not respond to my repeated inquiries as to, *inter alia*, whether the Debtor or the Yerushalmi Family Trust owned the shares in Netline that he was seeking to sell either because he does not know how many, if any, shares in Netline are actually owned by the Debtor ("through Enjoy") or he is colluding with the  shadowy offshore Panamanian entity known as King Capital Inc. to commit a fraud upon this Court by seeking an order approving the sale of the Netline shares owned by the Yerushalmi Family Trust through its interest in Enjoy by claiming that he is only selling shares owned by the Debtor individually (through "Enjoy").

11.     I believe that the latter scenario may be more likely given that the agreement the Trustee signed with King Capital Inc. gives it "the right to register Enjoy's stock in Netline under [King Capital's] name or to its order" without specifying exactly what amount of stock it relates to or limiting it in any way to stock owned by the Debtor and not by the Yerushalmi Family Trust. See Ex. "A" to Trustee's Motion at para. 3(a).

12.     Given the latter contractual right and additionally armed with the proposed order submitted by the Trustee for this Court to sign that would bar anyone claiming an "interest" in

4

the "Assets enumerated in the Asset Sale and Purchase Agreement to King Capital, Inc." from asserting that interest against the unspecified amount of Netline stock that is being sold by the Trustee, King Capital could then fraudulently register the Netline stock owned by the Yerushalmi Family Trust as its stock; all with this Court's unintended imprimatur to do so should the proposed order submitted to this Court by the Trustee be signed by this Court. See Proposed Order annexed to the Trustee's motion at paras. 3 and 1. Of course, this assumes that Netline, an Israeli corporation over whom this Court has no jurisdiction, would recognize the sale (which is not clear would happen for the reasons noted below), or in the alternative would instead apply Israeli law relating to Netline's incorporation documents and governance.

13.     The Court should ask the Trustee to explain his conduct in this regard.

14.     The Court should deny the Trustee's motion on this ground as well.

15.     The Court should also inquire as to why the Trustee did not specify the amount of shares in Netline that he thinks the Debtor owns "through Enjoy" given that he has not denied: (i) receiving the documents relating to Enjoy when the Debtor's records were seized on his behalf in October 2007 after his appointment as trustee; (ii) that he has deposed Mr. Oded E'dan, the former trustee of the 1989 Yerushalmi Family Trust, who testified that the ownership of Enjoy (through which the Netline shares are claimed by the Trustee) was split between the unrelated Oxford Trust (which not coincidently was represented by the same counsel now representing King Capital and which sold its 2.75% interest in Netline for $450,000 two years ago) and the Yerushalmi Family Trust; (iii) that he served a subpoena upon Netline (and thus presumably received information from it as to the ownership of any shares he intends to sell); and (iv) that, as both the schedule to the Debtor's bankruptcy petition and I disclosed to the Trustee, it is the Debtor's belief that he owns approximately 1.5% of the Netline shares with the

5

Yerushalmi Family Trust owning another approximate 1% through the defunct entity known as Enjoy - - all as set forth in my letter to the Trustee dated <u>February 28, 2012</u> with the attachments annexed thereto. A true copy of my February 28, 2012 letter is annexed hereto as Exhibit "5". **The Trustee never responded to this letter nor disputed the facts set forth therein.**

16.     Although the Debtor believes that he owns an approximate 1.5% interest in Netline "through Enjoy", the Court will note that the current trustee of the Yerushalmi Family Trust contends that it owns that interest along with the additional approximate 1% that the Debtor concedes it owns. <u>See</u> Levanovsky Aff. Mr. Levanovsky contends that Netline has sent him documentation that its records also reflect that the Yerushalmi Family Trust owns the entire 2.75% interest in Netline; including the approximate 1.5% portion that the Debtor believes that he owns "through Enjoy". <u>See Id</u>.

17.     The Court therefore should deny the Trustee's motion until he, among other things, commences an adversary proceeding and it is determined whether the Debtor own the shares in Netline that the Trustee wants to sell. The Trustee obviously cannot sell what the Debtor does not own under the well settled law noted above.

18.     The Trustee will also have to address how this Court can authorize his sale of any shares in Netline, should he ever prove what amount of shares the Debtor owns therein, when the by-laws of Netline apparently provide its shareholders with a right of first offer to match any price for such shares and state that Netline is not obligated to recognize the alleged transfer of stock in violation of this clause. <u>See</u> Yerushalmi Aff. and Ex. "7" annexed thereto. Among other things, the Trustee will have to address Israeli law applicable to such a right since Netline is an Israeli corporation. <u>Compare</u> <u>Jandel v. Precision Colors, Inc.</u>, 19 B.R. 415 (Bankr. S.D. Ohio

1982)(stock sale restrictions are not a lien that the stock can be sold "free and clear of" under 11 U.S.C. Section 363(f)).

19.     This provides yet another legally independent reason why the Trustee's motion must be denied.

20.     Even if the Court could ignore all of the foregoing reasons why the Trustee's motion must be denied, which it cannot, it cannot also ignore the fact that the Trustee's motion does not provide the Court with the documentation it needs to determine whether the value received for whatever amount of stock the Trustee thinks he is selling is sufficient.

21.     As noted above, the Netline shares owned by the unrelated Oxford Trust (i.e. 481 shares - - or an approximate 2.75% shareholder interest), was sold in 2010 for $450,000. See Yerushalmi Aff. Given that Netline's business has reportedly increased since then, it is highly likely that a 2.75% interest in Netline is worth even more today.

22.     Thus, if the Trustee believes he is selling a 2.75% interest in Netline (notwithstanding that the Yerushalmi Family Trust owns at least approximately 1% of the 2.75% according to the Debtor - - and all of the 2.75% according to the trustee of Yerushalmi Family Trust and possibly Netline itself), the $150,000 price offered for that stock is one third of the value of that stock in 2010 (and even less than that percentage today given the rise in the value of Netline stock since 2010).

23.     If the Trustee instead believes that he is selling only approximately 1.5% of the stock of Netline, the $150,000 price offered for that amount of Netline's stock would still only represent slightly more than one half of its value assuming that 2.75% of the stock is only worth the $450,000 paid for the shares sold by Oxford Trust two years ago (with in writing 1.5% thus being worth approximately $270,000 of this amount on a pro rata basis).

7

24.    This Court should therefore also deny the Trustee's motion to authorize this sale based on the gross inadequacy of the price.

25.    Given the extreme difference between the value of the shares and the proposed sale price, this Court also cannot find that the proposed purchaser, King Capital Inc., would be a good faith purchaser of the shares on that ground alone. See In re Pisces Leasing Corp., 66 B.R. 671 (E.D.N.Y. 1986)(a good faith purchaser is one who pays at least 75% of the appraised value of the property being sold).

26.    In addition, given that the proposed order submitted by the Trustee for this Court to sign would allow King Capital, or any other purchaser, to register the shares of Netline owned in the name of non-debtor Enjoy (no matter whether the Debtor or Yerushalmi Family Trust owns the interest in Enjoy through which the shares of Netline are owned), rather than limiting a purchaser's ability to register only those shares, if any, owned by the Debtor, is an independent basis for denying good faith purchaser protection on this proposed sale. See In re Gucci, 126 F.3d 380 (2d Cir. 1997)(a good faith purchaser for purposes of the Bankruptcy Code is a purchaser "who purchases the assets for value, in good faith **and without notice of adverse claims**")(emphasis added).

27.    Based on this, this Court cannot find that King Capital, or any other purchaser, is a good faith purchaser for value.

28.    Finally, this Court should also note that the proposed order submitted by the Trustee also provides, in bad faith, that "[n]otwithstanding the provisions of Rule 7062 of the Federal Rules of Bankruptcy Procedure, this Order shall be effective and enforceable immediately upon entry." This provision is designed to prevent the Debtor from being able to seek a stay pending appeal should the Court grant the Trustee's motion to authorize his sale of

8

Netline shares owned by Enjoy. As the Court is well aware, a failure to obtain a stay pending appeal would moot any appeal seeking to challenge the sale that would proceed in the absence of such a stay (with the limited exception that the good faith status of the purchaser could still be challenged). See 11 U.S.C. Section 363(m).

29.    The Court should not sign the proposed order at all but, in all events, it should not sign an order containing a provision cutting off rights of the Debtor to challenge the sale if the sale was approved notwithstanding all of the grounds noted above for why the sale could not be authorized by this Court.

30.    In sum, I believe that the Trustee's proposal to sell Netline's shares for $150,000 should be rejected until an adversary proceeding is commenced by the Trustee to determine if the shares the Trustee seeks to sell are in fact "property of the estate" and a thorough due diligent investigation is conducted as to the value of the shares, and such due diligence results are provided to the Court as well as the other interested parties such as the existing shareholders of Netline.

WHEREFORE, the motion made by the Trustee for authorization to sell my interest in Netline "through Enjoy" should be denied in its entirety and this Court should grant such other and further relief as it deems just and proper in the circumstances.

Thomas J. McGowan

Sworn to before me this 4th
day of September, 2012.

Notary Public

CARMELO GRIMALDI
Notary Public, State of New York
No. 4965188
Qualified in Nassau County
Commission Expires April 16, 2014

9

590124-1