# EXHIBIT F

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
In re:                                    Chapter 7

JOSEPH YERUSHALMI,                        Case No. 807-72816-478

          Debtor.
------------------------------------------------------X

### AFFIDAVIT OF AVISHAY LEVANOVSKY AS TRUSTEE OF THE YERUSHALMI FAMILY TRUST IN OPPOSITION TO MR. MARC PERGAMENT'S AUGUST 9, 2012 PROPOSAL TO SELL NETLINE SHARES

Avishay Levanovsky, as trustee of the Yerushalmi Family Trust, established on July 31, 1989 ("YFT"), hereby declares the following under the penalty of perjury:

1. I am the trustee of the YFT and write this affidavit in opposition to Mr. Marc Pergament's ("Pergament") motion to sell 481 shares of Netline Communications Technologies (NCT) Ltd. ("Netline") to King Capital, Inc., a Panamanian company ("King Capital") for $150,000. King Capital is represented by Ms. Yael ben Dov, and the Law Firm of Muchnick, Golieb & Golieb P.C., by Mr. Remko DeJong, Esq.

2. The 481 Netline shares ("Netline shares") were held, in equal shares, together with an additional 481 shares, by Enjoy Capital LLC ("Enjoy")[1], for the benefit of the YFT, and a third party, Oxford Trust, whose trustee is Mr. Howard Muchnick from the Law Firm of Muchnick, Golieb & Golieb P.C. Therefore, the Netline shares are not assets of the bankruptcy estate under the control of Mr. Pergament.

---

[1] In 2005 Enjoy became inactive.

3. To the best of my knowledge as trustee of the YFT, the purchase price of the 962 Netline shares in 2000 was $300,000 based on $312 per share. *See* Exhibit 1.

4. To the best of my information and belief, in or about April 2000, Mr. E'dan as a predecessor trustee of the YFT, participated in the acquisition of 962 shares of Netline, which constitutes 5.5% of the total outstanding shares of Netline. Thereafter, Mr. E'dan became a member of Netline's Board of Directors, and served in that capacity through the end of 2010. Despite my efforts, I could not find any evidence that the Netline shares were diluted throughout the years.

5. Before my appointment as the YFT trustee, I interviewed my predecessor trustees, including Mr. E'dan, and I was informed, among others, that the YFT is entitled to Netline's shares via Enjoy.

6. I also interviewed Mr. Yerushalmi who told me that he remembered that the Netline shares, which were under the name of Enjoy, belonged 50% to Oxford trust; 30% belonged to him; and 20% were owned by the YFT.

7. In August 2010 a Netline shareholder, Bauhinia Investments Ltd (the "Selling Shareholder") which held 160 shares, intended to sell its shares. Pursuant to section 19 of Netline's Articles of Association the Selling Shareholder offered his shares to all the other shareholders of Netline, with a copy to Netline. *See* Exhibit 2 the Selling Shareholder's offer dated August 30, 2010. Shortly thereafter, I had a

      conversation with Netline's key officers and became aware that Netline's existing shareholders had a vested interest in the Right of First Offer with respect to any offer of a shareholder to sell his Netline shares. The Selling Shareholder's asking price was $895 per share. *See* Exhibit 2, and Exhibit 3 Netline's Articles of Association.

8. As a result of the Selling Shareholder's offer, Netline offered the same price to all the shareholders.

9. In September 2010 Mr. E'dan informed me about Netline's offer, and that Oxford trust intended to sell its shares for the same price. Mr. E'dan suggested that I consider selling the YFT Netline shares.

10. Soon after Mr. E'dan's notice, I contacted Netline's management (including Ms. Relly, who is the in house legal counsel of Netline) to obtain more information about Netline's offer and its financial situation. After performing due diligence, I concluded that the price offered by Netline to the investors was too low, given Netline's successful operation and its extremely good liquidity, which derived from its increasing stream of income.

11. Mr. Pergament is silent about many details of his proposed sale of the Netline shares to King Capital. Mr. Pergament does not show any proof to support his claim that the Yerushalmi estate under his control owns 481 Netline shares, or any part thereof.

12. On one hand, I recall Mr. Yerushalmi informing me that according to his recollection he owns 60% of the 481 Netline shares, but on the

other hand, my predecessor trustees, including Mr. E'dan informed me that the entire 481 shares are owned by the YFT. Additionally, when I spoke with Netline, they mentioned that according to their knowledge, the YFT is the beneficial interest holder of Netline shares through Enjoy.

13. In any event, if Mr. Yerushalmi's memory is correct, Mr. Pergament should not be permitted to claim ownership, or beneficial ownership on 40% of the entire 481 Netline shares, which arithmetically account for 193 Netline shares.

14. There is no dispute that the 193 Netline shares are owned by the YFT. Therefore, Mr. Pergament cannot sell them.

15. If Mr. Pergament is able to prove ownership over the remaining 288 Netline shares, his offer translates to a sale price of $312 per share (the transaction with King Capital is 481 shares for $150,000. Arithmetically this is $312 per share) which is the basis for Mr. Pergament's offer to sell 481 shares for $150,000 to King Capital.

16. The YFT as a shareholder of 193 shares is entitled to exercise its Right of First Offer, together with other shareholders, according to Netline's Articles of Association, and buy the 288 shares for the amount of $89,856.

17. I hereby state, as a trustee of the YFT, that I accept the offer to purchase the 288 shares for the amount of $89,856, subject to Mr. Pergament's proof that the Debtor's estate, and not the YFT, owns the

4

18. 288 shares, and if no other legitimate Netline shareholder is willing to participate in the purchase.

18. Mr. Pergament has not provided any information about the identity of the owners of his proposed buyer, King Capital, and whether this company is related to other Netline shareholders. Apparently, King Capital, as a Panamanian Company, utilizes bearer shares to conceal the identity of its owner. This information is important for any sale transaction of Netline shares, according to section 19 of Netline's Articles of Association.

19. If the YFT Netline shares are sold as a result of Mr. Pergament's vague motion, the YFT will be damaged, as it will be deprived from its own assets, and its own vested right under Netline's Articles of Association.

20. Enclosed please find Exhibit 4, which is published information describing the wide extent of Netline's operation and involvement in the market.

21. If Mr. Pergament is permitted to sell the shares of Netline at issue for a total of $150,000 the YFT will be irreparably damaged, as it will surely be able to sell the shares for many times more money than Mr. Pergament is presently offering.

22. Accordingly, I respectfully submit that Mr. Pergament should not be permitted to sell the Netline shares to King Capital, or to anyone else.

Dated: Roslyn, New York
~~August~~ September 3, 2012

Avishay Levanovsky, as trustee of the
Yerushalmi Family Trust (July 31, 1989)

MELISSA LEAGUE
Notary Public State of New York
Certified in Queens County
NO. 01LE6247784
Commission Expires 09-06-2015

5