# EXHIBIT G

## ARTICLES OF ASSOCIATION

### OF

# Netline Communication Technologies (NCT) Ltd.

## A COMPANY LIMITED BY SHARES

1.  **TABLE "A" EXCLUDED**

    The regulations contained in the second schedule to the Companies Ordinance (New Version), 5743-1983 (the "Companies Ordinance") shall not apply to the Company.

2.  **INTERPRETATION**

    In these Articles, the following words shall have the meanings, if not inconsistent with the subject or context;

    **"The Company"** - Netline Communication Technologies Ltd.

    **"The Companies Ordinance"** or **"The Statutes"** - The Companies Ordinance, and every other Israeli Ordinance or statute in force concerning companies limited by shares and affecting the Company.

    **"These Articles"** - These Articles of Association as originally adopted or as amended from time to time by Special Resolution.

    **"The Office"** - The current registered office from time to time of the Company.

    **"Year"** and **"Month"** - a Gregorian month or year.

    **"Office Holder"** - a director, general manager, chief business manager, president, executive vice president, vice president, other manager directly subordinate to the general manager or any other person assuming the responsibilities of any of the foregoing positions without regard to such person's title.

    **"Permitted Transferee"** - (a) a transferee by operation of law; (b) a spouse or child of the Selling Party; (c) in the case of a transfer by a Selling Party that is a limited partnership or a limited liability company, any affiliated limited partnership or limited liability company managed by the same management or the partners of that limited partnership or members of the limited liability company; and (d) a wholly owned entity of the selling Party or any permitted transferee set forth in (a)-c.

3.  **PRIVATE COMPANY**

    This Company is a Private Company, as such a term is defined in the Companies Ordinance, and accordingly:

    (a)     the right to transfer shares of the Company is restricted as provided in these Articles;

(b)     the number of members of the Company at any time shall not exceed 50 (with the exception of employees or former employees of the Company); provided however, that if two or more individuals holds a share or shares of the Company jointly, they shall be deemed to be one member for the purpose of this Article.

(c)     the Company may not offer its shares to the public;

### SHARE CAPITAL

4.    **SHARE CAPITAL**

(a)     The authorized share capital of the Company is NIS 100,000 (one hundred thousand) divided into 100,000 (one hundred thousand) Ordinary shares, NIS 1.00 (one) par value per share.

(b)     The Ordinary shares all rank pari passu in all respects.

5.    **INCREASE OF AUTHORIZED SHARE CAPITAL**

(a)     The Company may, from time to time, by Special Resolution (as defined in Article 28(a) below), whether or not all the shares then authorized have been issued and whether or not all the shares theretofore issued have been called up for payment, increase its authorized share capital. Any such increase shall be in such amount and shall be divided into shares of such nominal amounts, and such shares shall confer such rights and preferences, and shall be subject to such restrictions, as the Special Resolution shall provide.

(b)     Except to the extent otherwise provided in the Special Resolution, any new shares included in the authorized share capital increased as aforesaid shall be subject to all the provisions of these Articles which are applicable to shares of the same class included in the existing share capital (and, if such new shares are of the same class as a class of shares included in the existing share capital, to all of the provisions which are applicable to shares of such class included in the existing share capital).

6.    **SPECIAL RIGHTS; MODIFICATION OF RIGHTS**

(a)     Subject to the provisions of the Memorandum of Association of the Company, and without prejudice to any special rights previously conferred upon the holders of existing shares in the Company, the Company may, from time to time, by Special Resolution, provide for shares with such preferred or deferred rights or rights of redemption or other special rights and/or restrictions, whether in regard to dividends, voting, repayment of share capital or otherwise, as may be stipulated in such Special Resolution.

(b)     (i)     If at any time the share capital is divided into different classes of shares, the rights attached to any class, unless otherwise provided by these Articles, may be modified or abrogated by the Company, by Special Resolution, subject to the consent in writing of the holders of seventy-five percent (75%) of the issued shares of such class or the adoption of a Special Resolution passed at a separate General Meeting of the holders of the shares of such class.

(ii)     The provisions of these Articles relating to General Meetings shall, mutatis mutandis, apply to any separate General Meeting of the holders of the shares of a particular class, provided, however, that the requisite quorum at any such separate General Meeting shall be two or more members present in

person or by proxy and holding not less than thirty three and one third (33 1/3%) percent of the issued shares of such class.

(iii)    Unless otherwise provided by these Articles, the enlargement of an authorized class of shares, or the issuance of additional shares thereof out of the authorized and unissued share capital, shall not be deemed, for purposes of this Article 6(b), to modify or abrogate the rights attached to previously issued shares of such class or of any other class.

7.   **CONSOLIDATION, SUBDIVISION, CANCELLATION AND REDUCTION OF SHARE CAPITAL**

(a)    The Company may, from time to time, by Special Resolution (subject, however, to the provisions of Article 6(b) hereof and to applicable law):

    (i)    consolidate and divide all or part of its issued or unissued authorized share capital into shares of a per share nominal value which is larger than the per share nominal value of its existing shares;

    (ii)    subdivide its shares (issued or unissued) or any of them, into shares of smaller nominal value than is fixed by the Memorandum of Association (subject, however, to the provisions of Section 144(4) of the Companies Ordinance);

    (iii)    cancel any shares which, at the date of the adoption of such Special Resolution, have not been taken or agreed to be taken by any person, and diminish the amount of its share capital by the amount of the shares so canceled; or

    (iv)    reduce its share capital in any manner, and with and subject to any incident authorized, and consent required, by law;

(b)    With respect to any consolidation of issued shares into shares of a larger nominal value per share, and with respect to any other action which may result in fractional shares, the Board of Directors may settle any difficulty which may arise with regard thereto, as it deems fit, and, in connection with any such consolidation or other action which could result in fractional shares, may, without limiting its aforesaid power:

    (i)    determine, as to the holder of shares so consolidated, which issued shares shall be consolidated into a share of a larger nominal value per share.

    (ii)    allot, in contemplation of or subsequent to such consolidation or other action, shares or fractional shares sufficient to preclude or remove fractional share holdings;

    (iii)    redeem, in the case of redeemable preference shares, and subject to applicable law, such shares or fractional shares sufficient to preclude or remove fractional share holdings;

    (iv)    cause the transfer of fractional shares by certain shareholders of the Company to other shareholders thereof so as to most expediently preclude or remove any fractional shareholdings, and cause the transferees of such fractional shares to pay the transferors thereof the fair value thereof, and the Board of Directors is hereby authorized to act in connection with such fractional shares, with full power of substitution, for the purposes of implementing the provisions of this sub-Article 7(b)(iv).

8. **ISSUANCE OF SHARE CERTIFICATES; REPLACEMENT OF LOST CERTIFICATES**

   (a)  Share Certificates shall be issued under the corporate seal of the Company and shall bear the signature of one Director, or of any other person or persons authorized therefor by the Board of Directors.

   (b)  Each member shall be entitled to one or several numbered certificate(s) for all the shares of any class registered in his name, each for one or more of such shares. Each certificate shall specify the serial numbers of the shares represented thereby and may also specify the amount paid up thereon.

   (c)  A share certificate registered in the names of two or more persons shall be delivered to the person first named in the Register of Members in respect of such co-ownership.

   (d)  A share certificate which has been defaced, lost or destroyed, may be replaced, and the Company shall issue a new certificate to replace such defaced, lost or destroyed certificate upon payment of such fee, and upon the furnishing of such evidence of ownership and such indemnity, as the Board of Directors in its discretion deems fit.

9. **REGISTERED HOLDER**

   Except as otherwise provided in these Articles, the Company shall be entitled to treat the registered holder of each share as the absolute owner thereof, and accordingly, shall not, except as ordered by a court of competent jurisdiction, or as required by statute, be obligated to recognize any equitable or other claim to, or interest in, such share on the part of any other person.

10. **ALLOTMENT OF SHARES**

   (a)  The unissued shares from time to time shall be under the control of the Board of Directors, who shall have the power to allot, issue or otherwise dispose of shares to such persons, on such terms and conditions (including inter alia terms relating to calls as set forth in Article 12(f) hereof), and either at par or at a premium, or, subject to the provisions of the Companies Ordinance, at a discount and/or with payment of commission, and at such times, as the Board of Directors deems fit, and the power to give to any person the option to acquire from the Company any shares, either at par or at a premium, or, subject as aforesaid, at a discount and/or with payment of commission, during such time and for such consideration as the Board of Directors deems fit.

   (b)  In the event that the Company proposes to issue New Securities, the following shall apply:

        (i)  The Company shall give the Purchasers, as such term is defined in the Share Purchase Agreements signed by the Company on March 29 and April 6, 2000 (the "SPAs") a 45-day prior written notice (the "Rights Notice") of its intention, describing the type of New Securities, the price, the general terms upon which the Company proposes to issue the same, and the number of shares that the Purchaser has the right to purchase under this Section. The Purchasers' right is to purchase, their pro rata share of New Securities (as defined below) that the Company may, from time to time, propose to sell or issue. Purchaser's pro-rata portion, for purposes of this right to maintain interest, is the ratio of the number of shares of Common Stock held by Purchaser bears to the total number of shares of Ordinary Shares outstanding

at the time of issuance of such New Securities. "New Securities" shall mean any Ordinary Share of the Company, whether now authorized or not, and any rights, options, or warrants to purchase said Ordinary Shares, and any securities of any type whatsoever that are, or may become, convertible into said shares; provided, however, that "New Securities" shall not include: (i) securities offered to the public; (ii) shares issued in connection with any stock split, dividend, re-capitalization or similar event by the Company; or (iii) shares issued to employees, consultants or directors of the Company, not including interested parties. Upon delivery of the Rights Notice, each Purchasers shall have fourteen (14) days to exercise his/its right to purchase New Securities under this Section, by giving written notice to the Company setting forth the quantity of New Securities to be purchased, for the price and upon the general terms specified in the Rights Notice. In the event a Purchaser fails to exercise in full his/its preemptive right within the above mentioned 45-day period, the Company shall have one hundred twenty (120) days thereafter to sell the unsold New Securities at a price and upon general terms no more favorable to the purchasers thereof than specified in the Company's Rights Notice. If the Company has not sold the New Securities within said one hundred twenty (120) day period, the Company shall not thereafter issue or sell any New Securities without first offering such securities to the Purchasers in the manner provided above. Notwithstanding the above, in the event of extraordinary business circumstances, the Company issues New Securities without giving the Purchasers a Rights Notice, the Purchasers shall have fourteen (14) days from the issuance of such New Securities to exercise their Preemptive Right to purchase the New Securities in such an amount that shall maintain the Purchasers' pre-issuance percentage in the Company under the same terms and conditions the New Securities were issued. In the occurrence of such extraordinary event, the omission of the Company to give the Purchasers a Rights Notice shall not be deemed as a breach of the SPAs so long as the Purchasers shall be given the said 14 days to exercise their Preemptive Rights as provided above. The Preemptive Right shall not apply to any investment made by a Strategic Investor or share issued to employees in accordance with an employee option plan to be adopted by the Company.

(ii)     Subject to the Purchasers right as per Article 10.2.1 above, the Company shall first invite the Investor (as such term is defined in the MOU signed by the Company on June 19, 1998) to offer the Company to subscribe for the shares proposed to be issued (the "Invitation"). The Investor shall be entitled to offer the Company within 21 days of the Company's Invitation the price per share that it is willing to pay for the shares proposed to be issued by the Company. If the Company shall decline to accept the Investor's offer or not respond to it, within 21 days, the company shall be entitled to issue the shares to any third party at terms no less favorable than those offered by the Investor during a period of 3 months  beginning at the end of the above mentioned 21 days period. If the Company shall accept the offer of the Investor, within 21 days, it shall issue it the shares at the terms mentioned in the Investor's Offer, within 30 days of its acceptance. If the Investor shall not offer the Company to subscribe for the shares mentioned in the company's Invitation, the Company shall be entitled to issue the shares to any third party and at any terms it sees fit during a period of 3 months beginning at the end of the above mentioned 21 days period.

(c)    The provisions of Article 10(b)(ii) above shall not pertain to securities offered to the public, securities offered to a strategic investor, securities issued pursuant to merger or reorganization, securities issued to employees pursuant to stock option and stock purchase plans approved by the company's board of directors, securities issued to any person or entity in consideration of services rendered to the company.

11.    **PAYMENT IN INSTALLMENTS**

If, pursuant to the terms of allotment or issue of any share, all or any portion of the price thereof shall be payable in installments, every such installment shall be paid to the Company on the due date thereof by the then registered holder(s) of the share or the person(s) then entitled thereto.

12.    **CALLS ON SHARES**

(a)    The Board of Directors may, from time to time, as it, in its discretion, deems fit, make calls for payment upon members in respect of any sum which has not been paid up in respect of shares held by such members and which is not pursuant to the terms of allotment or issue of such shares or otherwise, payable at a fixed time. Each member shall pay the amount of every call so made upon him (and of each installment thereof if the same is payable in installments), to the Company at the time(s) and place(s) designated by the Board of Directors, as any such time(s) may be thereafter extended or place(s) changed. Unless otherwise stipulated in a resolution of the Board of Directors (and in the notice hereafter referred to), each payment in response to a call shall be deemed to constitute a pro rata payment on account of all the shares in respect of which such call was made.

(b)    Notice of any call for payment by a member shall be given in writing to such member not less than fourteen (14) days prior to the time of payment fixed in such notice, and shall specify the time and place of payment. Prior to the time for any such payment fixed in a notice of a call given to a member, the Board of Directors may in its absolute discretion, by notice in writing to such member, revoke such call in whole or in part, extend the time fixed for payment thereof, or designate a different place of payment. In the event of a call payable in installments, only one notice thereof need be given.

(c)    If pursuant to the terms of allotment or issue of a share or otherwise, an amount is made payable at a fixed time (whether on account of such share or by way of premium), such amount shall be payable at such time as if it were payable by virtue of a call made by the Board of Directors and for which notice was given in accordance with paragraphs (a) and (b) of this Article 12, and the provisions of these Articles with regard to calls (and the non-payment thereof) shall be applicable to such amount (and the non-payment thereof).

(d)    Joint holders of a share shall be jointly and severally liable to pay all calls for payment in respect of such share and all interest payable thereon.

(e)    Any amount called for payment which is not paid when due shall bear interest from the date fixed for payment until actual payment thereof, at such rate (not exceeding the then prevailing interest rate charged by leading commercial banks in Israel), and payable at such time(s) as the Board of Directors may prescribe.

(f)    Upon the allotment of shares, the Board of Directors may provide for differences among the allottees of such shares as to the amounts and times for payment of calls in respect of such shares.

13. **PREPAYMENT**

With the approval of the Board of Directors, any member may pay to the Company any amount not yet payable in respect of his shares, and the Board of Directors may approve the payment by the Company of interest on any such amount until the same would be payable if it had not been paid in advance, at such rate and time(s) as may be approved by the Board of Directors. The Board of Directors may at any time cause the Company to repay all or any part of the money so advanced, without premium or penalty. Nothing in this Article 13 shall derogate from the right of the Board of Directors to make any call for payment before or after receipt by the Company of any such advance.

14. **FORFEITURE AND SURRENDER**

   (a)   If any member fails to pay an amount payable by virtue of a call, or interest thereon as provided for in accordance herewith, on or before the day fixed for payment of the same, the Board of Directors may at any time after the day fixed for such payment, so long as such amount (or any portion thereof) or interest thereon (or any portion thereof) remains unpaid, resolve to forfeit all or any of the shares in respect of which such payment was called for. All expenses incurred by the Company in attempting to collect any such amount or interest thereon, including, without limitation, attorney's fees and costs of legal proceedings, shall be added to, and shall, for all purposes (including the accrual of interest thereon), constitute a part of, the amount payable to the Company in respect of such call.

   (b)   Upon the adoption of a resolution as to the forfeiture of a member's share, the Board of Directors shall cause notice thereof to be given to such member, which notice shall state that, in the event of the failure to pay the entire amount so payable by a date specified in the notice (which date shall be not less than fourteen (14) days after the date such notice is given and which may be extended the Board of Directors), such shares shall be ipso facto forfeited, provided, however, that, prior to such date, the Board of Directors may nullify such resolution of forfeiture, but such nullification shall not stop the Board of Directors from adopting a further resolution of forfeiture in respect of the non-payment of the same amount.

   (c)   Without derogating from Articles 54 and 59 hereof, whenever shares are forfeited as herein provided, all dividends, if any, theretofore declared in respect thereof and not actually paid shall be deemed to have been forfeited at the same time.

   (d)   The Company, by resolution of the Board of Directors, may accept the voluntary surrender of any share not fully paid for.

   (e)   Any share forfeited or surrendered as provided herein, shall become the property of the Company, and the same, subject to the provisions of these Articles, may be sold, re-allotted or otherwise disposed of as the Board of Directors deems fit.

   (f)   Any member whose shares have been forfeited or surrendered shall cease to be a member in respect of the forfeited or surrendered shares, but shall, notwithstanding, be liable to pay, and shall forthwith pay, to the Company, all calls, interest and expenses owing upon or in respect of such shares at the time of forfeiture or surrender together with interest thereon from the time of forfeiture or surrender until actual payment, at the rate prescribed in Article 12(e) above, and the Board of Directors, in its discretion, may, but shall not be obligated to, enforce the payment of such moneys, or any part thereof. In the event of such forfeiture or surrender, the Company, by resolution of the Board of Directors, may accelerate the date(s) of payment of any or all amounts then owing to the Company by the member in

question (but not yet due) in respect of all shares owned by such member, solely or jointly with another.

(g)   The Board of Directors may at any time, before any share so forfeited or surrendered shall have been sold, re-allotted or otherwise disposed of, nullify the forfeiture or surrender on such conditions as it deems fit, but such nullification shall not stop the Board of Directors from re-exercising its powers of forfeiture pursuant to this Article 14.

15. **LIEN**

(a)   Except to the extent the same may be waived or subordinated in writing, the Company shall have a first and paramount lien upon all the shares registered in the name of each member (without regard to any equitable or other claim or interest in such shares on the part of any other person), and upon the proceeds of the sale thereof, for his debts, liabilities and engagements to the Company arising from any amount payable by such member in respect of any unpaid or partly paid share, whether or not such debt, liability or engagement has matured. Such lien shall extend to all dividends from time to time declared or paid in respect of such share. Unless otherwise provided, the registration by the Company of a transfer of shares shall be deemed to be a waiver on the part of the Company of the lien (if any) existing on such shares immediately prior to such transfer.

(b)   The Board of Directors may cause the Company to sell a share subject to such a lien when the debt, liability or engagement giving rise to such lien has matured, in such manner as the Board of Directors deems fit, but no such sale shall be made unless such debt, liability or engagement has not been satisfied within fourteen (14) days after written notice of the intention to sell shall have been served on such member, his executors or administrators.

(c)   The net proceeds of any such sale, after payment of the costs thereof, shall be applied in or toward satisfaction of the debts, liabilities or engagements of such member in respect of such share (whether or not the same have matured), and the remaining balance (if any) shall be paid to the member, his executors, administrators or assigns.

16. **SALE AFTER FORFEITURE OR SURRENDER OR IN ENFORCEMENT OF LIEN**

Upon any sale of a share after forfeiture or surrender of for enforcing a lien, the Board of Directors may appoint any person to execute an instrument of transfer of the share so sold and cause the purchaser's name to be entered in the Register of Members in respect of such share. The purchaser shall be registered as the shareholder and shall not be bound to see to the regularity of the sale proceedings, or to the application of the proceeds of such sale, and after his name has been entered in the Register of Members in respect of such share, the validity of the sale shall not be impeached by any person, and the remedy of any person aggrieved by the sale shall be in damages only and against the Company exclusively.

17. **REDEEMABLE SHARES**

The Company may, subject to applicable law, issue redeemable shares and redeem the same.

18. **CONVERSION OF SHARES INTO STOCK**

(a)   The Board of Directors may, with the approval of the members previously given by Special Resolution, convert any paid-up shares into stock, and may, with like sanction, reconvert any stock into paid-up shares of any denomination.

(b) The holders of stock may transfer the same, or any part thereof, in the same manner and subject to the same regulations, as the shares from which the stock arose might have been transferred prior to conversion, or as near thereto as circumstances admit, provided, however, that the Board of Directors may from time to time fix the minimum amount of stock so transferable, and restrict or forbid the transfer of fractions of such minimum, but the minimum shall not exceed the nominal value of each of the shares from which such stock arose.

(c) The holders of stock shall, in accordance with the amount of stock held by them, have the same rights and privileges as regards dividends, voting at meetings of the Company and other matters as if they held the shares from which such stock arose, but no such right or privilege, except participation in the dividends and profits of the Company, shall be conferred by any such aliquot part of such stock as would not, if existing in shares, have conferred that right or privilege.

(d) Such of the Articles of the Company as are applicable to paid-up shares shall apply to stock, and the words "share" and "shareholder" (or "member") therein shall include "stock" and "stockholder".

## TRANSFER OF SHARES

19. **RIGHT OF FIRST OFFER**

(a) If a shareholder wishes to sell or otherwise transfer any or all of such shareholder's shares in the Company (the "Selling Party"), to any person other than to a Permitted Transferee, the Selling Party shall be required to first offer the shares that such shareholder wishes to transfer (the "Offered shares") to the other shareholders of the Company (the "Offerees"), pro rata to their respective interests in the Company. The Selling Party shall send the other shareholders a written offer in which the Selling Party shall specify the following information ("the Offer"):

 (i) the class and number of shares of the Company that the Selling Party proposes to sell or transfer;

 (ii) a representation and warranty as to the shares proposed to be sold or transferred with respect to any applicable pledges, debts, security interests and other third party interests; and

 (iii) the price that the Selling Party intends to receive in respect of the Offered shares, which shall be stated in cash, and requested terms of payment thereof.

The Offer shall constitute an irrevocable offer made by the Selling Party to sell to each of the Offerees such Offeree's pro rata share of the shares covered by the Offer, upon the terms specified in the Offer and as described below. For purposes of this Article 19(a), an Offeree's pro rata share shall be determined based upon the relationship between the number of Ordinary shares of the Company held by such Offeree and the number of Ordinary shares of the Company held by all Offerees.

(b) Any of the Offerees who wishes to purchase the Offered shares shall notify the Selling Party of such Offeree's agreement to purchase the Offered shares contained in the Offer within 21 days of receipt of the Offer.

(c) If any of the Offerees declines to purchase the Offered shares upon the terms specified in the Offer or does not respond to the Offer within 21 days of receipt, the Selling Party shall so notify all of the other shareholders and they shall be entitled to purchase any remaining shares within 7 days in accordance with the Offer, pro rata to their respective interests in the Company or otherwise as may be agreed among them.

If the Offer specifies that it is contingent upon the purchase of all the Offered shares, the Selling Party shall be entitled to refuse to transfer the shares pursuant to the Offer if there is only a partial response to the Offer.

(d)     If there remain any shares that have not been acquired by the shareholders as specified above, than the Selling Party may sell such shares to a third party, provided that such sale is consummated (i) in a bona fide transaction; and (ii) at a price that is not lower than that specified in the Offer; and (iii) subject to payment terms that are no more favorable to the purchaser than those specified the Offer; all within 90 days of the expiration of the period specified in Article 19© above.

(e)     If the shares are sold to a third party in such manner, the Company shall be required to approve the transfer of the shares, provided that the transfer is in accordance with the terms contained in the Offer, and further provided that the transfer of the shares is not adverse to the Company's interest, as reasonably determined by the Board of Directors.

(f)     If any or all of the Offerees agree to purchase the Offered shares on the terms specified in the Offer; the Offered shares shall become the property of such Offerees who responded to the Offer, pro rata to their respective interests in the Company, against payment of the consideration as specified in the Offer. Any transferee of shares in the company pursuant to this Article 19 shall take such shares subject to all of the restrictions contained in this Article 19.

20.    **REGISTRATIONS OF TRANSFERS**

(a)     No transfer of shares shell be registered unless there has been compliance with the procedure set in Articles 19, and a proper writing or instrument of transfer (in any customary from or any other form satisfactory to the Board of Directors) has been submitted to the Company or its transfer agent, together with share certificate(s) and such other evidence of title as the Board of Directors may reasonably require. Until the transferee has been registered in the Register of Members in respect of the shares so transferred, the Company may continue to regard the transferor as the owner thereof.

(b)     The Board of Directors may to the extent it deems necessary in its discretion close the Register of Members for registrations of transfers of shares during any year for a period determined by the Board of Directors, and no registrations of transfers of shares shall be made by the Company during any such period during which the Register of Members is so closed.

21.    **RECORD DATE FOR NOTICES OF GENERAL MEETINGS AND OTHER ACTION**

Notwithstanding any provision of these Articles to the contrary, and to allow the Company to determine the members entitled to notice of, or to vote at, any Annual or Extraordinary General Meeting or any adjournment thereof, or to express consent to or dissent from any corporate action in writing without a meeting, or entitled to receive payment of any dividend or other distribution or allotment of any rights, or entitled to exercise any rights in respect of, or to take or be subject to, any other action, the Board of Directors may fix in advance, a record date, which shall not be more than thirty nor less than ten days before the date of such meeting, nor more than thirty days prior to any other action. A determination of members of record entitled to notice of, or to vote at a meeting shall apply to any adjournment or the meeting: provided, however, that the Board of Directors may fix a new record date for the adjourned meeting.

22.  **DECEDENTS' SHARES**

(a)  In case of the death of a registered holder of a share registered in the names of two or more holders, the Company may recognize the survivor(s) as the sole owner(s) thereof unless and until the provisions of Article 21(b) have been effectively invoked.

(b)  Any person becoming entitled to a share in consequence of the death of any shareholder, upon producing evidence of the grant of probate or letters of administration or declaration of succession (or such other evidence as the Board of Directors may reasonably deem sufficient), shall be registered as a member in respect of such share, or may, subject to the regulations as to transfer herein contained, transfer such share.

23.  **RECEIVERS AND LIQUIDATORS**

(a)  The Company may recognize any receiver, liquidator or similar official appointed to wind-up, dissolve or otherwise liquidate a corporate member, and a trustee, manager, receiver, liquidator or similar official appointed in bankruptcy or in connection with the reorganization of, or similar proceeding with respect to a member or its properties, as being entitled to the shares registered in the name of such member.

(b)  Such receiver, liquidator or similar official appointed to wind-up, dissolve or otherwise liquidate a corporate member and such trustee, manager, receiver, liquidator, or similar official appointed in bankruptcy or in connection with the reorganization of, or similar proceedings with respect to a member or its properties, upon producing such evidence as the Board of Directors may deem sufficient as to his authority to act in such capacity or under this Article, shall with the consent of the Board of Directors (which the Board of Directors may grant or refuse in its absolute discretion), be registered as a member in respect of such shares, or may, subject to the regulations as to transfer herein contained, transfer such shares.

## GENERAL MEETINGS

24.    **ANNUAL GENERAL MEETING**

    (a)    An Annual General Meeting shall be held once in every calendar year at such time (within a period of not more than fifteen (15) months after the last preceding Annual General Meeting) and at such place, either within or outside the State of Israel, as may be determined by the Board of Directors.

    (b)    Subject to the provisions of these Articles, the function of the Annual General Meeting shall be to elect the members of the Board of Directors; to receive the Financial Statements, the ordinary reports and accounts of the Company's directors and auditors; to approve final annual (pursuant and subject to Articles 52, 53, 54 and 57) dividends; to appoint the Company's auditors and to fix their remuneration; and to transact any other business which under these Articles or the Statutes are to be transacted at a General Meeting.

25.    **EXTRAORDINARY GENERAL MEETINGS**

All General Meetings other than Annual General Meetings shall be called "Extraordinary General Meeting". The Board of Directors may, whenever it thinks fit, convene an Extraordinary General Meeting, at such time and place, within or out-side the State of Israel, as may be determined by the Board of Directors, and shall be obliged to do so upon a request in writing in accordance with Section 109 of the Companies Ordinance.

26.    **NOTICE OF GENERAL MEETINGS; OMISSION TO GIVE NOTICE**

    (a)    Not less than seven (7) days' prior notice shall be given of every General Meeting, provided, however, that a Special Resolution shall not be passed unless at least twenty one (21) days' prior notice shall have been given of the meeting at which it is proposed to pass the same unless all shareholders entitled to vote agree on a shorter period. Each such notice shall specify the place and the day and hour of the meeting, and the general nature of each item to be acted upon thereat, said notice to be given to all members who would be entitled to attend and vote at such meeting. Anything therein to the contrary notwithstanding, with the consent of all members entitled to vote thereon, a resolution may be proposed and passed at such meeting although a lesser notice than hereinabove prescribed has been given.

    (b)    The accidental omission to give notice of a meeting to any member, or the non-receipt of notice sent to such member, shall not invalidate the proceedings at such meeting.

-13-

## PROCEEDINGS AT GENERAL MEETINGS

27. **QUORUM**

    (a)    No business shall be transacted at a General Meeting, or at any adjournment thereof, unless the quorum required under these Articles for such General Meeting or such adjourned meeting, as the case may be, is present when the meeting proceeds to business.

    (b)    In the absence of contrary provisions in these Articles, two or more members (not in default of any sum referred to in Article 32(a) hereof), present in person or by proxy and holding shares conferring in the aggregate more than one-third of the voting power of the Company, shall constitute a quorum of General Meetings.

    (c)    If within half an hour from the time appointed for the meeting a quorum is not present, the meeting, if convened upon requisition under Section 109 of the Companies Ordinance, shall be dissolved, but in any other case it shall be adjourned to the same day in the next week, at the same time and place, or to such day and at such time and place as the Chairman may determine with the consent of the holders of a majority of the voting power present at the meeting in person or by proxy and voting on the question of adjournment. No business shall be transacted at any adjourned meeting except business which might lawfully have been transacted at the meeting as originally called. At such adjourned meeting (other than an adjourned separate meeting of a particular class of shares as referred to in Article 6 of these Articles), any two (2) members (not in default as aforesaid) present in person or by proxy, and holding shares conferring in the aggregate more than one-third of the voting power of the Company, shall constitute a quorum.

28. **CHAIRMAN**

The Chairman, if any, of the Board of Directors, shall preside as Chairman at every General Meeting of the Company. If, at any meeting, the Chairman is not present within fifteen (15) minutes after the time fixed for holding the meeting or is unwilling to act as Chairman, the Co-Chairman shall preside at the meeting. If at any such meeting both the Chairman and the Co-Chairman are not present or are unwilling to act as Chairman, the members present shall choose someone of their number to be Chairman. The office of Chairman shall not, by itself, entitle the holder thereof to vote at any General Meeting nor shall it entitle such holder to a second or casting vote (without derogating, however, from the rights of such Chairman to vote as a shareholder or proxy of a shareholder if, in fact, he is also a shareholder or such proxy).

29. **ADOPTION OF RESOLUTIONS AT GENERAL MEETINGS**

    (a)    (i)    An Ordinary Resolution shall be deemed adopted if approved by the holders of a majority of the voting power represented at the meeting in person or by proxy and voting thereon.

            (ii)    A Special or Extraordinary Resolution shall be deemed adopted if approved by the holders of not less than seventy-five percent (75%) of the voting power represented at the meeting in person or by proxy and voting thereon.

    (b)    Every question submitted to a General Meeting shall be decided by a show of hands, but if a written ballot is demanded by any member present in person or by proxy and entitled to vote at the meeting, the same shall be decided by such ballot. A written ballot may be demanded before the proposed resolution is voted upon or immediately

after the declaration by the Chairman of the results of the vote by a show of hands. If a vote by written ballot is taken after such declaration, the results of the vote by a show of hands shall be of no effect, and the proposed resolution shall be decided by such written ballot. The demand for a written ballot may be withdrawn at any time before the same is conducted, in which event another member may then demand such written ballot. The demand for a written ballot shall not prevent the continuance of the meeting for the transaction of business other than the question on which the written ballot has been demanded.

(c)     A declaration by the Chairman of the meeting that a resolution has been carried unanimously, or carried by a particular majority, or lost, and an entry to that effect in the minute book of the Company, shall be conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favor of or against such resolution.

30.    **RESOLUTIONS IN WRITING**

A resolution in writing signed by all members of the Company then entitled to attend and vote at General Meetings or to which all such members have given their written consent (by letter, telegram, telex, facsimile or otherwise) shall be deemed to have been unanimously adopted by a General Meeting duly convened and held.

31.    **POWER TO ADJOURN**

The Chairman of a General Meeting at which a quorum is present may, with the consent of the holders of a majority of the voting power represented in person or by proxy and voting on the question of adjournment (and shall if so directed by the meeting), adjourn the meeting from time to time and from place to place, but no business shall be transacted at any adjourned meeting except business which might lawfully have been transacted at the meeting as originally called.

32.    **VOTING POWER**

Subject to provisions of Article 33(a) and subject to any provision hereof conferring special rights as to voting, or restricting the right to vote, every member shall have one vote for each share held by him of record, on every resolution, without regard to whether the vote thereon is conducted by a show of hands, by written ballot or by any other means.

33.    **VOTING RIGHTS**

(a)     No member shall be entitled to vote at any General Meeting (or be counted as a part of the quorum thereat), unless all calls then payable by him in respect of his shares in the Company have been paid, but this Article 33(a) shall not apply to separate General Meetings of the holders of a particular class of shares pursuant to Article 6(b).

(b)     A company or other corporate body being a member of the Company may duly authorize any person to be its representative at any meeting of the Company or to execute or deliver a proxy on its behalf. Any person so authorized shall be entitled to exercise on behalf of such member all the power which the latter could have exercised if it were an individual shareholder. Upon the request of the Chairman of the meeting, written evidence of such authorization (in form acceptable to the Chairman) shall be delivered to him.

(c)    Any member entitled to vote may vote either in person or by proxy (who need not be a member of the Company), or, if the member is a company or other corporate body, by a representative authorized pursuant to Article 33(b).

(d)    If two or more persons are registered as joint holders of any share, the vote of the senior who tenders a vote, in person or by proxy, shall be accepted to the exclusion of the vote(s) of the other joint holder(s). For the purpose of this Article 33(d), seniority shall be determined by the order of registration of the joint holders in the Register of Members.

### PROXIES

## 34.   INSTRUMENT OF APPOINTMENTS

(a)    An instrument appointing a proxy shall be in writing and shall be substantially in the following form:

"I _____ of _____
   (Name of Shareholder)    (Address of Shareholder)
being a member of Netline Communication Technologies Ltd. hereby appoint
_____ of _____
   (Name of Proxy)    (Address of Proxy)
as my proxy to vote for me and on my behalf at the General Meeting of the Company to be held on the ____ day of _____, 199_ and at any adjournment(s) thereof.
Signed this ____ day of _____, 199_.

or in any usual or common form or in such other form as may be approved by the Board of Directors. Such proxy shall be duly signed by the appointor or such person's duly authorized attorney or, if such appointor is a company or other corporate body, under its corporate seal or stamp or the hand of its duly authorized agent(s) or attorney(s).

(b)    The instrument appointing a proxy (and the power of attorney or other authority, if any, under which such instrument has been signed) shall either be presented to the Chairman at the meeting at which the person named in the instrument proposes to vote or be delivered to the Company (at its Registered Office, at its principal place of business, or at the offices of its registrar or transfer agent, or at such place as the Board of Directors may specify) not less than two (2) hours before the time fixed for such meeting, except that the instrument shall be delivered forty-eight (48) hours before the time fixed for the meeting where the meeting is to be held outside of Israel and the instrument is delivered to the Company's registrar or transfer agent. Notwithstanding the above, the Chairman shall have the right to waive the time requirement provided above with respect to all instruments of proxies and to accept any and all instruments of proxy until the beginning of a General Meeting.

## 35.   EFFECT OF DEATH OF APPOINTOR OR TRANSFER OF SHARE OR REVOCATION OF APPOINTMENT

(a)    A vote cast in accordance with an instrument appointing a proxy shall be valid notwithstanding the prior death or bankruptcy of the appointing member (or of his attorney-in-fact, if any, who signed such instrument), or the transfer of the share in respect of which the vote is cast, unless written notice of such matters shall have

been received by the Company or by the Chairman of such meeting prior to such vote being cast.

(b)    An instrument appointing a proxy shall be deemed revoked (i) upon receipt by the Company or the Chairman, subsequent to receipt by the Company of such instrument, of written notice signed by the person signing such instrument or by the member appointing such proxy canceling the appointment thereunder (or the authority pursuant to which such instrument was signed) or of an instrument appointing a different proxy (and such other documents, if any, required under Article 34(b) for such new appointment), provided such notice of cancellation or instrument appointing a different proxy were so received at the place and within the time for delivery of the instrument revoked thereby as referred to in Article 34(b) hereof, or (ii) if the appointing member is present in person at the meeting for which such instrument of proxy was delivered, upon receipt by the Chairman of such meeting of written notice from such member of the revocation of such appointment, or if and when such member votes at such meeting. A vote cast in accordance with an instrument appointing a proxy shall be valid notwithstanding the revocation or purported cancellation of the appointment, or the presence in person or vote of the appointing member at a meeting for which it was rendered, unless such instrument of appointment was deemed revoked in accordance with the foregoing provisions of this Article 35(b) at or prior to the time such vote was cast.

## BOARD OF DIRECTORS

36. **POWERS OF BOARD OF DIRECTORS**

    (a)   General

The management of the business of the Company shall be vested in the Board of Directors, which may exercise all such powers and do all such acts and things as the Company is authorized to exercise and do, and are not hereby or by law required to be exercised or done by the Company by action of its members at a General Meeting. The authority conferred on the Board of Directors by this Article 36 shall be subject to the provisions of the Companies Ordinance, these Articles, and any regulation or resolution consistent with these Articles adopted from time to time by the Company by action of its members at a General Meeting, provided, however, that no such regulation or resolution shall invalidate any prior act done by or pursuant to a decision of the Board of Directors which would have been valid if such regulation or resolution had not been adopted. The Company shall refrain from taking the following actions without a resolution of the Company's Board of Directors:

        (i)     merger or consolidation of the Company with other persons;

        (ii)    approval of distribution of profits to shareholders;

        (iii)   entry of a new shareholder;

        (iv)   issuance, allotment, grant of shares, options for shares, warrants or other rights that are convertible into shares;

        (v)    appointment of the General Manager;

        (vi)   determining the Company's policy regarding the appointment of distributors and agents;

        (vii)  approval of the Company's annual budget.

    (b)   Borrowing Power

The Board of Directors may from time to time, at its discretion, cause the Company to borrow or secure the payment of any sum or sums of money for the purposes of the Company, and may secure or provide for the repayment of such sum or sums in such manner, at such times and upon such terms and conditions as it deems fit, and, in particular, by the issuance of bonds, perpetual or redeemable debentures, debenture stock, or any mortgages, charges, or other securities on the undertaking or the whole or any part of the property of the Company, both present and future, including its uncalled or called but unpaid capital for the time being.

    (c)   Reserves

The Board of Directors may, from time to time, set aside any amount(s) out of the profits of the Company as a reserve or reserves for any purpose(s) which the Board of Directors, in its absolute discretion, shall deem fit, including without limitation, capitalization and distribution of bonus shares, and may invest any sum so set aside in any manner and from time to time deal with and vary such investments and dispose of all or any part thereof, and employ any such reserve or any part thereof in the business of the Company without being bound to keep the same separate from other assets of the Company, and may subdivide or redesignate any reserve or cancel the same or apply the funds therein for another purpose, all as the Board of Directors may from time to time think fit.

(d)    Negative Covenants

As long as the Investor is entitled to appoint a representative to the Board of Directors, without the approval of such member the Company shall not:

(i)    expand the activity of the Company into new fields of business;

(ii)    institute dissolution, bankruptcy, liquidation or reorganization proceedings;

(iii)    transfer substantially all of the assets and/or rights of the Company;

(iv)    enter into any transaction in which all or part of the Founders' is an interested party;

(v)    change in the number of directors from that set forth in Article 39 herein

## 37.    EXERCISE OF POWERS OF BOARD OF DIRECTORS

(a)    A meeting of the Board of Directors duly convened and at which a quorum is present shall be competent to exercise all the authorities, powers and discretion vested in or exercisable by the Board of Directors.

(b)    A resolution proposed at any meeting of the Board of Directors shall be deemed adopted if approved by a majority of the Directors present when such resolution is put to a vote and voting thereon.

(c)    A resolution in writing signed by 100% of the Directors then in office and lawfully entitled to vote thereon or to which all of such Directors have given their written consent (by letter, telegram, telex, facsimile, electronic mail or otherwise) shall be deemed to have been unanimously adopted by a meeting of the Board of Directors duly convened and held.

## 38.    DELEGATION OF POWERS

(a)    The Board of Directors may, subject to the provisions of the Companies Ordinance, delegate any or all of its powers to committees, each consisting of one or more persons (who are Directors), and it may from time to time revoke such delegation or alter the composition of any such committee. Any Committee so formed (in these Articles referred to as a "Committee of the Board of Directors"), shall, in the exercise of the powers so delegated, conform to any regulations imposed on it by the Board of Directors. The meetings and proceedings of any such Committee of the Board of Directors shall, mutatis mutandis, be governed by the provisions herein contained for regulating the meetings of the Board of Directors, so far as not superseded by any regulations adopted by the Board of Directors under this Article. Unless otherwise expressly provided by the Board of Directors in delegating powers to a Committee of the Board of Directors, such Committee shall not be empowered to further delegate such powers.

(b)    Without derogating from the provisions of Article 51, the Board of Directors may from time to time appoint a Secretary to the Company, as well as officers, agents, employees and independent contractors, as the Board of Directors deems fit, and may terminate the service of any such person. The Board of Directors may, subject to the provisions of the Companies Ordinance, determine the powers and duties, as well as the salaries and emoluments, of all such persons, and may require security in such cases and in such amounts as it deems fit.

(c)    The Board of Directors may from time to time, by power of attorney or otherwise, appoint any person, company, firm or body of persons to be the attorney or attorneys of the Company at law or in fact for such purpose(s) and with such powers,

authorities and discretions, and for such period and subject to such conditions, as it deems fit, and any such power of attorney or other appointment may contain such provisions for the protection and convenience of persons dealing with any such attorney as the Board of Directors deems fit, and may also authorize any such attorney to delegate all or any of the powers, authorities and discretions vested in him.

39. **NUMBER OF DIRECTORS**

The holder/s of each 12% of the issued and outstanding share capital of the Company shall be entitled to appoint, substitute, terminate and/or replace one (1) member of the Company's Board of Directors.

This provision is subject to special rights granted in Share Purchase Agreements signed by the Company on March 29 and April 6, 2000.

40. **ELECTION AND REMOVAL OF DIRECTORS**

Any shareholder(s) entitled to appoint, substitute, terminate and/or replace a member of the Company's Board of Directors shall exercise the right by giving a written notice to the Company.

41. **QUALIFICATION OF DIRECTORS**

No person shall be disqualified to serve as a Director by reason of his not holding shares in the Company or by reason of his having served as a Director in the past.

42. **CONTINUING DIRECTORS IN THE EVENT OF VACANCIES**

In the event of one or more vacancies in the Board of Directors, the continuing Directors may continue to act in every matter, and, pending the filling of any vacancy pursuant to the provisions of Article 39, may appoint Directors to temporarily fill any such vacancy, provided, however, that if they number less than a majority of the number provided for pursuant to Article 38 hereof, they may only act in an emergency or to fill the office of director which has become vacant up to the minimum number or in order to call a General Meeting of the Company for the purpose of electing Directors to fill any or all vacancies, so that at least a majority of the number of Directors provided for pursuant to Article 38 hereof are in office as a result of said meeting.

43. **VACATION OF OFFICE**

(a)    The office of a Director shall be vacated, ipso facto, upon his or her death, or if he or she be found lunatic or become of unsound mind, or if he or she becomes bankrupt, or if the Director is a company, upon its winding-up.

(b)    The office of a Director shall be vacated by his, her or its written resignation. Such resignation shall become effective on the date fixed therein, or upon the delivery thereof to the Company, whichever is later.

44. **REMUNERATION OF DIRECTORS**

A Director shall be paid remuneration by the Company for his services as Director to the extent such remuneration shall have been approved by a General Meeting of the Company.

45. **CONFLICT OF INTEREST**

Subject to the provisions of the Companies Ordinance, no Director shall be disqualified by virtue of his office from holding any office or place of profit in the Company or in any

company in which the Company shall be a shareholder or otherwise interested, or from contracting with the Company as vendor, purchaser or otherwise, nor shall any such contract, or any contract or arrangement entered into by or on behalf of the Company in which any Director shall be in any way interested, be avoided, nor, other than as required under the Companies Ordinance, shall any Director be liable to account to the Company for any profit arising from any such office or place of profit or realized by any such contract or arrangement by reason only of such Director's holding that office or of the fiduciary relations thereby established, but the nature of his interest as well as any material fact of document, must be disclosed by him at the meeting of the Board of Directors at which the contract or arrangement is first considered, if his interest then exists, or, in any other case, at no later than the first meeting of the Board of Directors after the acquisition of his interest.

46.    **ALTERNATE DIRECTORS**

(a)    A Director may, by written notice to the Company given in the manner set forth in Article 45(b) below, appoint any individual (whether or not such person is then a member of the Board of directors) as an alternate for himself (in these Articles referred to as "Alternate Director"), remove such Alternate Director and appoint another Alternate Director in place of any Alternate Director appointed by him whose office has been vacated for any reason whatsoever. The appointment of an Alternate Director shall be subject to the consent of the Board of Directors if the appointee is not then a member of the Board of Directors. Unless the appointing Director, by the instrument appointing an Alternate Director or by written notice to the Company, limits such appointment to a specified period of time or restricts it to a specified meeting or action of the Board of Directors, or otherwise restricts its scope, the appointment shall be for all purposes, and for a period of time concurrent with the term of the appointing Director.

(b)    Any notice to the Company pursuant to Article 45(a) shall be given in person to, or by sending the same by mail to the attention of the General Manager of the Company at the principal office of the Company or to such other person or place as the Board of Directors shall have determined for such purpose, and shall become effective on the date fixed therein, or upon the receipt thereof by the Company (at the place as aforesaid), whichever is later, subject to the consent of the Board of Directors if the appointee is not then a member of the Board of Directors, in which case the notice will be effective as of the date of such consent.

(c)    An Alternate Director shall have all the rights and obligations of the Director who appointed him, provided however, that (i) he may not in turn appoint an alternate for himself (unless the instrument appointing him otherwise expressly provides), and (ii) that an Alternate Director shall have no standing at any meeting of the Board of Directors or any committee thereof while the Director who appointed him is present, and (iii) that the Alternate Director is not entitled to remuneration.

(d)    Any natural person, whether or not he or she be a member of the Board of Directors, may act as an Alternate Director. One person may act as Alternate Director for several Directors, and in such event he or she shall have a number of votes (and shall be treated as the number of persons for purposes of establishing a quorum) equal to the number of Directors for whom he acts as Alternate Director. If an Alternate Director is also a Director in his own right, his rights as an Alternate Director shall be in addition to his rights as a Director.

(e)    An Alternate Director shall alone be responsible for his or her own acts and defaults, and he or she shall not be deemed the agent of the Director(s) who appointed him.

(f)    The office of an Alternate Director shall be vacated under the circumstances, mutatis mutandis, set forth in Article 43, and such office shall ipso facto be vacated if the Director who appointed such Alternate Director ceased to be a Director.

## PROCEEDINGS OF THE BOARD OF DIRECTORS

47.    **MEETINGS**

(a)    The Board of Directors may meet and adjourn its meetings and otherwise regulate such meetings and proceedings as the Directors think fit.

(b)    Any Director may at any time, and the Secretary, upon the request of such Director, shall, convene a meeting of the Board of Directors, but not less than two (2) days notice shall be given of any meetings so convened. Notice of any such meeting shall be given to all the Directors and may be given orally, by telephone, in writing or by mail, telex, cablegram or facsimile. Notwithstanding anything to the contrary herein, failure to deliver notice to a director of any such meeting in the manner required hereby may be waived by such Director, and a meeting shall be deemed to have been duly convened notwithstanding such defective notice if such failure of defect is waived prior to action being taken at such meeting, by all Directors entitled to participate at such meeting to whom notice was not duly given as aforesaid.

48.    **QUORUM**

Until otherwise unanimously decided by the Board of Directors, a quorum at a meeting of the Board of Directors shall be constituted by the presence in person or by telephone conference of half (50%) of the Directors then in office who are lawfully entitled to participate in the meeting. No business shall be transacted at a meeting of the Board of Directors unless the requisite quorum is present (in person or by telephone conference) when the meeting proceeds to business.

49.    **CHAIRMAN OF THE BOARD OF DIRECTORS**

The Board of Directors may from time to time, elect one of its members to be the Chairman of the Board of Directors, and another of its members as Co-Chairman, remove such Chairman and Co-Chairman from office and appoint others in their place. The Chairman of the Board of Directors shall preside at every meeting of the Board of Directors, but if there is no such Chairman, or if at any meeting he is not present within fifteen (15) minutes of the time fixed for the meeting or if he is unwilling to take the chair, the Co-Chairman shall preside. If both the Chairman and the Co-Chairman are not present within such fifteen (15) minutes or are unwilling to take the chair the Directors present shall choose one of their number to be the Chairman of such meeting.

50.    **VALIDITY OF ACTS DESPITE DEFECTS**

All acts done bona fide at any meeting of the Board of Directors, or of a Committee of the Board of Directors, or by any person(s) acting as Director(s), shall, notwithstanding that it may afterwards be discovered that there was some defect in the appointment of the participants in such meetings or any of them or any person(s) acting as aforesaid, or that they or any of them were disqualified, be as valid as if there were no such defect or disqualification.

## CHIEF EXECUTIVE OFFICER AND PRESIDENT

51.  **CHIEF EXECUTIVE OFFICER AND PRESIDENT**

The Board of Directors may from time to time appoint one or more persons, whether or not Directors, as Chief Executive Officer or Officers, General Manager or Managers, or President of the Company and may confer upon such person(s), and from time to time modify or revoke, such title(s) and such duties and authorities of the Board of Directors as the Board of Directors may deem fit, subject to such limitations and restrictions as the Board of Directors may from time to time prescribe. Unless otherwise determined by the Board of Directors, the Chief Executive Officer(s) shall have authority with respect of the management of the Company in the ordinary course of business. Such appointment(s) may be either for a fixed term or without any limitation of time, and the Board of Directors may from time to time (subject to the provisions of the Companies Ordinance and of any contract between any such person and the Company) fix his or their salaries and emoluments, remove or dismiss him or them from office and appoint another or others in his or their place or places.

## MINUTES

52.  **MINUTES**

(a)    Minutes of each General Meeting and of each meeting of the Board of Directors shall be recorded and duly entered in books provided for that purpose, and shall be held by the Company at its principal place of office or its Registered Office or such other place as shall have been determined by the Board of Directors. Such minutes shall, in all events, set forth the names of the persons present at the meeting and all resolutions adopted thereat.

(b)    Any minutes as aforesaid, if purporting to be signed by the chairman of the meeting or by the chairman of the next succeeding meeting, shall constitute prima facie evidence of the matters recorded therein.

## DIVIDENDS

53.  **DECLARATION OF DIVIDENDS**

The Board of Directors may from time to time declare, and cause the Company to pay, such interim dividend as may appear to the Board of Directors to be justified by the profits of the Company. The final dividend in respect of any fiscal year shall be proposed by the Board of Directors and shall be payable only after the same has been approved by Ordinary Resolution of the Company, but no such resolution shall provide for the payment of an amount exceeding that proposed by the Board of Directors for the payment of such final dividend, and no such resolution or any failure to approve a final dividend shall affect any interim dividend theretofore declared and paid. The Board of Directors shall determine the time for payment of such dividends, both interim and final, and the record date for determining the shareholders entitled thereto.

54.  **FUNDS AVAILABLE FOR PAYMENT OF DIVIDEND**

No dividend shall be paid otherwise than out of the profits of the Company.

55.  **AMOUNT PAYABLE BY WAY OF DIVIDENDS**

Subject to the provisions of these Articles and subject to any rights or conditions attached at that time to any share in the capital of the Company granting preferential, special or deferred rights or not granting any rights with respect to dividends, the profits of the

Company which shall be declared as dividends shall be distributed according to the proportion of the nominal value paid up on account of the shares held at the date so appointed by the Company, without regard to the premium paid in excess of the nominal value, if any. No amount paid or credited as paid on a share in advance of calls shall be treated for purposes of this Article as paid on a share.

56.    **INTEREST**

No dividend shall carry interest as against the Company.

57.    **PAYMENT IN SPECIE**

Upon the recommendation of the Board of Directors approved by Ordinary Resolution of the Company, the Company (i) may cause any monies, investments, or other assets forming part of the undivided profits of the Company, standing to the credit of a reserve fund, or to the credit of a reserve fund for the redemption of capital, or in the hands of the Company and available for dividends, or representing premiums received on the issuance of shares and standing to the credit of the share premium account, to be capitalized and distributed among such of the shareholders as would be entitled to receive the same if distributed by way of dividend and in the same proportion, on the basis that they become entitled thereto as capital, or may cause any part of such capitalized fund to be applied on behalf of such shareholders in paying up in full, either at par or at such premium as the resolution may provide, any unissued shares or debentures or debenture stock of the Company, which shall be distributed accordingly or in payment, in full or in part, of the uncalled liability on all issued shares or debentures or debenture stock if such liability exists, on a pro rata basis, and (ii) may cause such distribution or payment to be accepted by such shareholders in full satisfaction of their interest in the said capitalized sum. In case of a stock dividend, holders of each class of shares can receive shares of one class whether such class existed prior thereto or was created therefor or shares of the same class which conferred upon the holder the right to receive such dividend.

58.    **IMPLEMENTATION OF POWERS UNDER ARTICLE 57**

For the purpose of giving full effect to any resolution under Article 57, and without derogating from the provisions of Article 7(b) hereof, the Board of Directors may settle any difficulty which may arise in regard to the distribution as it thinks expedient, and, in particular, may issue fractional certificates, and may fix the value for distribution of any specific assets, and may determine that cash payments shall be made to any members upon the basis of the value so fixed, or that fractions of less value than the nominal value of one share may be disregarded in order to adjust the rights of all parties, and may vest any such cash, shares, debentures, debenture stock or specific assets in trustees upon such trusts for the persons entitled to the dividend or capitalized fund as may seem expedient to the Board of Directors. Where requisite, a proper contract shall be filed in accordance with Section 129 of the Companies Ordinance, and the Board of Directors may appoint any person to sign such contract on behalf of the persons entitled to the dividend or capitalized fund as may seem expedient to the Board of Directors. Where requisite, a proper contract shall be filed in accordance with Section 129 of the Companies Ordinance, and the Board of Directors may appoint any person to sign such contract on behalf of the persons entitled to the dividend or capitalized fund.

59.    **DIVIDEND ON UNPAID SHARES**

Without derogation from Article 55 hereof, the Board of Directors may give an instruction which shall prevent the distribution of a dividend to the registered holders of share the full nominal amount of which has not been paid up.

60.  **RETENTION OF DIVIDENDS**

    (a)    The Board of Directors may retain any dividend or other monies payable or property distributable in respect of a share on which the Company has a lien, and may apply the same in or towards satisfaction of the debts, liabilities, or engagements in respect of which the lien exists.

    (b)    The Board of Directors may retain any dividend or other monies payable or property distributable in respect of a share in respect of which any person is, under Article 22 or 23, entitled to become a member, or which any person, is, under said Articles, entitled to transfer, until such person shall become a member in respect of such share or shall transfer the same.

61.  **UNCLAIMED DIVIDENDS**

All unclaimed dividends or other moneys payable in respect of a share may be invested or otherwise made use of by the Board of Directors for the benefit of the Company until claimed. The payment by the Directors of any unclaimed dividend or such other moneys into a separate account shall not constitute the Company a trustee in respect thereof. The principal (and only the principal) of an unclaimed dividend or such other moneys shall be, if claimed, paid to a person entitled thereto.

62.  **MECHANICS OF PAYMENT**

The Board of Directors may fix the mechanics for payment of dividends as it deems fit. However, if nothing to the contrary in the resolution of the Board of Directors, then all dividends or other moneys payable in cash in respect of a share may be paid by check or warrant sent through the post to, or left at, the registered address of the person entitled thereto or by transfer to a bank account specified by such person (or, if two or more persons are registered as joint holders of such share or are entitled jointly thereto in consequence of the death or bankruptcy of the holder or otherwise, to the joint holder whose name is registered first in the Register of Members or his bank account or the person who the Company may then recognize as the owner thereof or entitled thereto under Article 21 or 22 hereof, as applicable, or such person's bank account), or to such person and at such other address as the person entitled thereto may by writing direct. Every such check or warrant shall be made payable to the order of the person to whom it is sent, or to such person as the person entitled thereto as aforesaid may direct, and payment of the check or warrant by the banker upon whom it is drawn shall be a good discharge to the Company.

63.  **RECEIPT FROM A JOINT HOLDER**

If two or more persons are registered as joint holders of any share, or are entitled jointly thereto in consequence of the death or bankruptcy of the holder or otherwise, any one of them may give effectual receipts for any dividend or other moneys payable or property distributable in respect of such share.

## ACCOUNTS

64. **BOOKS OF ACCOUNT**

The Board of Directors shall cause accurate books of account to be kept in accordance with the provisions of the Companies Ordinance and of any other applicable law. Such books of account shall be kept at the Registered Office of the Company, or at such other place or places as the Board of Directors may think fit, and they shall always be open to inspection by all Directors. No member, not being a Director, shall have any right to inspect any account or book or other similar document of the Company, except as conferred by law or authorized by the Board of Directors or by Ordinary Resolution of the Company.

65. **AUDIT**

At least once in every fiscal year the accounts of the Company shall be audited and the correctness of the profit and loss account and balance sheet certified by one or more duly qualified auditors.

66. **AUDITORS**

The appointment, authorities, rights and duties of the auditor(s) of the Company, shall be regulated by applicable law, provided, however, that in exercising its authority to fix the remuneration of the auditor(s), the members in General Meeting may, by Ordinary Resolution, act (and in the absence of any action in connection therewith shall be deemed to have so acted) to authorize the Board of Directors to fix such remuneration subject to such criteria or standards, if any, as may be provided in such Ordinary Resolution, and if no such criteria or standards are so provided, such remuneration shall be fixed in an amount commensurate with the volume and nature of the services rendered by such auditor(s).

## BRANCH REGISTERS

67. **BRANCH REGISTERS**

Subject to and in accordance with the provisions of Sections 71 to 80, inclusive, of the Companies Ordinance and to all orders and regulation issued thereunder, the Company may cause branch registers to be kept in any place outside Israel as the Board of Directors may think fit, and, subject to all applicable requirements of law, the Board of Directors may from time to time adopt such rules and procedures as it may think fit in connection with the keeping of such branch registers.

## INDEMNITY AND INSURANCE

68. **INDEMNITY AND INSURANCE**

(a) Subject to the provisions of the Companies Ordinance, the Company may enter into a contract for the insurance of the Liability, in whole or in part, of any of its Office Holders with respect to: (i) a breach of his duty of care to the Company or to another person; (ii) a breach of his fiduciary duty to the Company, provided that the Office Holder acted in good faith and had reasonable cause to assume that his act would not prejudice the interests of the Company; or (iii) a financial liability imposed upon him in favor of another person in respect of an act performed by him in his capacity as an Office Holder of the Company.

(b) The Company may indemnify an Office Holder against: (i) a financial liability imposed on him in favor of another person by any judgment, including a settlement or an arbitrator's award approved by a court in respect of an act performed in his

capacity as an Office Holder of the Company, and (ii) reasonable litigation expenses, including attorneys' fees, expended by such Office Holder or charged to him by a court, in proceedings instituted against him by the Company or on its behalf or by another person, or in a criminal charge, from which he was acquitted, all in respect of an act performed in his capacity as an Office Holder of the Company, and (iii) liabilities, obligations and expenses in respect of which in the future the Company may be legally permitted to indemnify under the Companies Ordinance.

## WINDING UP

69. **WINDING UP**

If the Company is wound up, then subject to applicable law and to the rights of the holders of shares with special rights upon winding up, the assets of the Company available for distribution among the members shall be distributed to them in proportion to the respective holdings of the shares in respect of which such distribution is being made.

## RIGHTS OF SIGNATURE, STAMP, AND SEAL

70. **RIGHTS OF SIGNATURE, STAMP, AND SEAL**

(a)   The Board of Directors shall be entitled to authorize any person or persons (who need not be Directors) to act and sign on behalf of the Company, and the acts and signature of such person(s) on behalf of the Company shall bind the Company insofar as such person(s) acted and signed within the scope of his or their authority.

(b)   The Board of Directors may provide for a seal. If the Board of Directors so provides, it shall also provide for the safe custody thereof. Such seal shall not be used except by the authority of the Board of Directors and in the presence of the person(s) authorized to sign on behalf of the Company, who shall sign every instrument to which such seal is affixed.

(c)   The Company may exercise the powers conferred by Section 102 of the Companies Ordinance regarding a seal for use abroad, and such powers shall be vested in the Board of Directors.

## NOTICES

71. **NOTICES**

(a)   Any written notice or other document may be served by the Company upon any member either personally or by sending it by prepaid mail (airmail if sent internationally) addressed to such member at his address as described in the Register of Members. Any written notice or other document may be served by any member upon the Company by tendering the same in person to the Secretary or the General Manager or Chief Executive Officer of the Company at the principal office of the Company or by sending it by prepaid registered mail (airmail if posted outside Israel) to the Company at it Registered Address. Any such notice or other document shall be deemed to have been served five (5) business days after it has been posted (7 business days if posted internationally), or when actually tendered in person, to such member (or to the Secretary or the General Manager). Notice sent by cablegram, telex, or facsimile shall be deemed to have been served two business days after the

notice is sent to the addressee, or when in fact received, whichever is earlier, notwithstanding that it was defectively addressed or failed, in some other respect, to comply with the provisions of this Article 70(a).

(b)    All notices to be given to the members shall, with respect to any share to which persons are jointly entitled, be given to whichever of such persons is named first in the Register of Members, and any notice so given shall be sufficient notice to the holders of such share.

(c)    All member whose address is not described in the Register of Members, and who shall not have designated in writing delivered to the Company an address for the receipt of notices, shall not be entitled to receive any notice from the Company.

(d)    Notwithstanding anything to the contrary contained therein, notice by the Company of a General Meeting which is published in at least two daily newspapers in the State of Israel within the time otherwise required for giving notice of such meeting under Article 25 hereof and containing the information required to be set forth in such notice under such Article, shall be deemed to notice of such meeting duly given, for purposes of these Articles, to any member of the Company.

**IN WITNESS WHEREOF,** the foregoing Articles of Association were signed this ___ day of June, 1998:

1. NETLINE TECHNOLOGIES LTD.    _____    _____

    (51-23333-1  ח.פ)    witness

    6667 Ordinary Shares

2. V-POINT LTD.    _____    _____

    (51-218295-7  ח.פ)    witness

    3333 Ordinary Share

August 30, 2010

To Shareholders of Netline
Communications Technologies (NCT) Ltd.

### Re: An Offer to Purchase Shares

As per Section 19 of Netline Communications Technologies (NCT) Ltd.'s
("NCT") Articles of Association, I the undersigned, Bauhinia Investments Ltd.
(the "Selling Party"), holder of shares of NCT, hereby inform and update you
as follows:

    (i)     I wish to sell all of 160 Ordinary Shares par value NIS 1.00 each of
NCT (the "Offered Shares") owned and held by Bauhinia
Investments Ltd.

    (ii)    I hereby warrant and represent that the Offered Shares are not
subject to any pledges, debts, security interests and other third party
interests.

    (iii)   I intend to receive an amount of $895 per each Offered Share, in
cash, which will be paid to me in one (1) installment, within 45
days from the date of this offer letter (the "Offer").

This Offer constitutes an irrevocable offer made by me to sell to each of NCT's
shareholders (the "Offeree(s)") such Offeree's pro rata share of the shares
covered by the Offer (as set forth in **Annex A** hereto), upon the terms
specified herein.

As the provisions set forth in NCT's Articles of Association, any of the
Offerees who wishes to purchase the Offered Shares shall notify me of such
Offeree's agreement to purchase the Offered Shares contained in the Offer
within 21 days of receipt of the Offer.

In the event that any of the Offerees declines to purchase the Offered Shares
upon the terms specified in the Offer or does not respond to the Offer within
the time frame set forth above, I shall so notify all of the other shareholders
which accepted and responded positively to this Offer, and they shall be
entitled to purchase any remaining shares within 7 days in accordance with the
Offer, pro rata to their respective interests in NCT or otherwise as may be
agreed among them.

Should you wish to exercise your right of first offer and purchase your pro rata
share of the Offered Shares, please complete and execute the notice attached
hereto as **Annex B**, and return it to me [with a copy to NCT at its registered
address] via email and/or fax within the time frame set herein.

If not all of the Offered Shares have been aquired by the Offrees, I will have
the right to offer and sell the Offered Shares to a third party, in terms not less