UNITED STATES BANKRUPTCY COURT   **Hearing Date: September 22, 2014**
EASTERN DISTRICT OF NEW YORK   **Hearing Time: 2:00 p.m.**
---------------------------------------------------------------x
In re:             Chapter 11

INTERFAITH MEDICAL CENTER, INC.,   Case No. 12-48226 (CEC)



       Debtor.
---------------------------------------------------------------x

## OBJECTION OF THE UNITED STATES TRUSTEE TO FINAL APPLICATIONS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

TO:  THE HONORABLE CARLA E. CRAIG,
    CHIEF UNITED STATES BANKRUPTCY JUDGE:

   William K. Harrington, United States Trustee for Region 2 (the "United States Trustee"),

by and through counsel and pursuant to his duties under 28 U.S.C. § 586 (a)(3)(A)(i) and (ii),

respectfully submits this Objection (the "Objection") to the Final Fee Applications (the

"Applications") of Willkie Farr & Gallagher LLP ("WF&G"), as counsel to Interfaith Medical

Center, Inc. (the "Debtor"); CohnReznick LLP ("CohnReznick"), as financial advisors to the

Debtor; Nixon Peabody LLP ("Nixon Peabody"), as special corporate and healthcare counsel to

the Debtor; Garfunkel Wild, P.C. ("GW"), as special counsel to the Debtor; Ernst & Young LLP

("E&Y"), as independent auditors to the Debtor ; Donlin, Recano & Company, Inc. ("Donlin

Recano"),as administrative agent to the Debtor; Alston & Bird LLC ("A&B"), as counsel to the

Official Committee of Unsecured Creditors (the "Committee"); CBIZ Accounting, Tax and

Advisory of New York, LLC ("CBIZ"), as financial advisor to the Committee; Eric M.

Huebscher and Huebscher & Co. ("Huebscher"), as Patient Care Ombudsman (the

"Ombudsman"); and DiConza Traurig LLP ("Diconza Traurig"), as counsel to the Ombudsman

(collectively, the "Professionals"), and respectfully represents as follows:

I.    **PRELIMINARY STATEMENT**

The Applications seek the award of an aggregate of approximately $12.5 million in fees and expenses.  The Applications, and the aggregate fee and expense reduction the United States Trustee is seeking for each Professional, are summarized in the chart below:

| Applicants | Fees Requested | Fee Reduction Requested | Expenses Requested | Expense Reduction Requested |
|---|---|---|---|---|
| WF&G, Counsel to the Debtor | $5,338,744.50 | $350,006.75 | $58,887.61 | $0.00 |
| CohnReznick, Financial Advisors to the Debtor | $2,980,358.50 | $254,945.00 | $16,748.42 | $7,415.25 |
| Nixon Peabody, Special Corporate and Healthcare Counsel to the Debtor | $453,503.50 | $9,504.49 | $2,886.24 | $0.00 |
| GW, Special Counsel to the Debtor | $410,767.00 | $5,930.55 | $1,444.42 | $0.00 |
| Donlin Recano,  Administrative Agent  to the Debtor | $35,622.50 | $0.00 | $1,795.30 | $0.00 |
| E&Y, Independent Auditors to the Debtor | $369,539.50 | $936.00 | $2,378.00 | $0.00 |
| A&B, Counsel for the Committee | $1,694,757.50 | $70,657.25 | $37,416.56 | $0.00 |
| CBIZ, Financial Advisor to the Committee | $754,678.00 | $16,807.25 | $141.91 | $0.00 |
| Huebscher, Patient Care Ombudsmen | $284,843.25 | $13,785.00 | $6,292.72 | $0.00 |
| Diconza Traurig, Counsel for the Patient Care Ombudsmen | $97,717.25 | $1,913.50 | $3,460.35 | $0.00 |

The United States Trustee objects to the allowance of certain fees incurred by the Professionals and to the reimbursement of certain expenses and requests that the Court reduce the identified fees or expenses, as outlined herein.  The objections and arguments of the United States Trustee set forth in the First, Second and Third Interim Fee Objections, filed on May 6, 2013 [ECF Doc. No. 449], September 30, 2013 [ECF Doc. No. 746] and March 7, 2014 [ECF

Doc. No. 951], respectively, are not repeated herein but are respectfully asserted and incorporated by reference in this Objection.

## II.    JURISDICTION, VENUE, AND STATUTORY PREDICATE

The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. § 1408.  The statutory predicates are Sections 330 and 331 of title 11, of the United States Code (the "Bankruptcy Code").  These matters were initiated pursuant to Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Local Bankruptcy Rules for the Eastern District of New York (the "Local Rules"), General Order 613, Guidelines for Fees and Disbursements for Professionals in Eastern District of New York Bankruptcy Case (the "EDNY Guidelines"), Administrative Order 538, Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals (the "Monthly Compensation Procedures"), and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (the "UST Guidelines").

## III.    STATEMENT OF FACTS

### A.    General Background

1.    On December 2, 2012 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  ECF Doc. No. 1.  The Debtor designated itself as a health care business on its petition.  Id. at 1.

2.    The Debtor operates a multi-site health care system that provides medical, surgical, pediatric, dental, psychiatric and other health care services throughout central Brooklyn. See Declaration of Luis A. Hernandez (A) Pursuant to Local Bankruptcy Rule 1007-4, and (B) in Support of First Day Applications, executed on December 2, 2012 (the "Hernandez

Declaration"), at 3, ¶ 5, ECF Doc. No. 2.  The Debtor's facilities consist of a 287-bed acute care teaching hospital on Atlantic Avenue in Bedford-Stuyvesant, Brooklyn, and an ambulatory care network of eight clinics located in the central Brooklyn communities of Crown Heights and Bedford-Stuyvesant.  Id.

3.     From the Petition Date through the Effective Date (defined below), the Debtor operated its business and managed its affairs as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4.     On December 13, 2012, the United States Trustee appointed the Committee.  ECF Doc. No. 59.

**B.     The Debtor's Professionals**

5.     By Order dated January 18, 2013, the Court authorized the Debtor to retain WF&G as counsel to the Debtor nunc pro tunc to the Petition Date.  ECF Doc. No. 145.

6.     By Order dated January 18, 2013, the Court authorized the Debtor to retain Nixon Peabody as Special Corporate and Healthcare Counsel to the Debtor nunc pro tunc to the Petition Date.  ECF Doc. No. 144.

7.     By Order dated January 18, 2013, the Court authorized the Debtor to retain CohnReznick as Financial Advisors to the Debtor nunc pro tunc to the Petition Date.  ECF Doc. No. 142.

8.     By Order dated January 18, 2013, the Court authorized the Debtor to retain Donlin Recano as Administrative Agent to the Debtor.   ECF Doc. No. 143.

9.     By Order dated March 22, 2013, the Court authorized the Debtor to retain E&Y as Independent Auditors to the Debtor, nunc pro tunc to January 28, 2013.   ECF Doc. No. 345.

10.    By Order dated July 3, 2013, the Court authorized the Debtor to retain GW as Special Counsel to the Debtor, nunc pro tunc to June 17, 2013.   ECF Doc. No. 559.

### C.    The Committee Professionals

11.    By Order dated February 13, 2013, the Court authorized the Committee to retain A&B as counsel to the Committee effective December 13, 2012.  ECF Doc. No. 230.

12.    By Order dated February 13, 2013, the Court authorized the Committee to retain CBIZ as financial advisor to the Committee.  ECF Doc. No. 233.

### D.    The Patient Care Ombudsman

13.    On January 10, 2013, Heubscher was appointed as the Ombudsman.  ECF Doc. No. 113.

14.    By Order dated March 15, 2013, the Court authorized the retention of DiConza Traurig as Counsel to the Ombudsman nunc pro tunc to January 28, 2013.  ECF Doc. No. 326.

### E.    Interim Fees

15.    Throughout the Debtor's case the Professionals filed periodic interim fee applications and, on May 6, 2013, September 30, 2013 and March 7, 2014, the United States Trustee filed objections and/or responses (the "Interim Fee Objections") regarding each of these interim applications.  ECF Doc. Nos. 449, 746 and 951.

### F.    Case Status

16.    The Debtor is current with the filing of its monthly operating reports and with the payment of quarterly fees due and owing to the United States Trustee pursuant to Section 1930 of title 28, United States Code and any applicable interest thereon.

17.     By Order dated June 11, 2014, the Court confirmed the Debtor's Second Amended Chapter 11 Plan of Reorganization.  ECF Doc. No. 1158.  The Effective Date of the Plan was June 19, 2014 (the "Effective Date").  ECF Doc. No. 1177.

## IV.    LEGAL STANDARDS

### A.    Reasonableness

Bankruptcy Code Section 330(a)(1) provides that:

After notice to the parties in interest and the United States trustee and a hearing, and subject to section 326, 328, and 329, the court may award to a trustee, … an examiner, … or a professional person employed under section 327 or 1103 –

(A)    reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, … or attorney and by any paraprofessional person employed by any such person; and

(B)    reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B).

To determine reasonableness, Section 330(a)(3) of the Bankruptcy Code provides that:

. . .  the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

a.    the time spent on such services;

b.    the rates charged for such services;

c.    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

d.    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

e.    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

      f.      whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11. U.S.C. § 330(a)(3).

The fee applicant bears the burden of proof for its claim for compensation. <u>Zeisler & Zeisler, P.C. v. Prudential Ins. Co.</u> (<u>In re JLM, Inc.</u>), 210 B.R. 19, 24 (B.A.P. 2d Cir. 1997); <u>see also</u> <u>Howard & Zukin Capital v. High River Ltd. P'ship</u>, No. 05 Civ. 5726 (BSJ), 2007 WL 1217268, at *2 (S.D.N.Y. Apr. 24, 2007) (same); <u>In re CPW Acquisition Corp.</u>, No. 08-14623 (JMP), 2011 WL 830556, at 7 (Bankr. S.D.N.Y. Mar. 3, 2011).  The failure of an applicant to sustain its burden of proof may result in the denial of the fee request.  <u>Brake v. Tavormina</u> (<u>In re Beverly Mfg. Corp.</u>), 841 F.2d 365, 371 (11th Cir. 1988) (affirming district court decisions denying applicant's fee request).  To satisfy its burden, an applicant must justify its charges with detailed, specific, itemized documentation.  <u>In re Baker</u>, 374 B.R. 489, 494 (Bankr. E.D.N.Y. 2007); <u>see also</u> <u>In re Bennett Funding Group</u>, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997) (same).

Even in the absence of an objection, the Court has an independent duty to scrutinize the fee request.  <u>In re CCT Commc'ns, Inc.</u>, No. 07-10210 (SMB), 2010 WL 3386947, at *4 (Bankr. S.D.N.Y. Aug. 24, 2010) (citing <u>In re Busy Beaver Bldg. Ctrs., Inc.</u>, 18 F.3d 833, 841 (3d Cir. 1994); <u>see also</u> <u>In re Child World</u>, 185 B.R. 14, 17 (Bankr. S.D.N.Y. 1995) (Congress continued to impose this duty upon the courts, which existed under the Bankruptcy Act, when it adopted the Bankruptcy Code by requiring fee applicants to obtain court approval of reasonableness of professional fees.) (citing M. Bienenstock, Bankruptcy Reorganization at 788, n.206 ("To make fee determinations appear as fair as possible the judiciary should retain control of fees, given the sensitivities they generate and the need to promote public confidence in the system."))).

To determine "reasonable compensation," this Court is guided by Section 330(a)(3) of the Bankruptcy Code, the Bankruptcy Rules, Local Rule 2016-1, the EDNY Guidelines and the UST Fee Guidelines.  Local Rule 2016-1 fully adopts the UST Fee Guidelines.  See E.D.N.Y. LBR 2016-1 (any applicant seeking an award of compensation or reimbursement of out-of-pocket expenses "shall comply with the requirements contained in any fee guidelines promulgated by the United States trustee.")  In addition, "[t]he court may, on its own motion or on the motion of the United States Trustee for the Region or the District, or any other party in interest, award compensation that is less than the amount of compensation that is requested."  In re GSC Group, Inc., No. 10-14653 (AJG), 2012 WL 676409, *1 (Bankr. S.D.N.Y. Feb. 29, 2012) (additional citation omitted).  Fee applications are judged on whether the professional's actions taken were reasonable at the time taken.  See In re Kohl, 421 B.R. 115, 127 (Bankr. S.D.N.Y.); In re Cenargo Intern, PLC, 294 B.R. 571, 595 (Bankr. S.D.N.Y. 2005).

### 1.    "Lumping" or Block Billing

According to both the EDNY Guidelines and the UST Guidelines, billing records must clearly identify each discrete task billed, indicate the date the task was performed, the precise amount of time spent (not to be billed in increments greater than one-tenth of an hour), who performed the task, the level of experience, and that person's hourly rate.  See General Order 613, ¶ A(4)(vii); UST Guidelines, ¶ (b)(4)(v).  Moreover, the UST Guidelines provide that "[s]ervices should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry."  Id.  Both the EDNY Guidelines and the UST Guidelines only permit "lumping" where the aggregate time does not exceed a half-hour.  Id.

Recording multiple tasks in one billing entry, typically referred to as "block billing" or "lumping," is routinely disallowed as it makes it exceedingly difficult to determine the

reasonableness of the time spent on each of the individual tasks performed.  See Baker, 374 B.R.

at 494 ("A professional is required to bill each task separately.  That way, a Court can scrutinize

the reasonableness of the time expended and counsel is not tempted to inflate the actual time

spent and group multiple tasks together hoping to camouflage the true length of an individual

task.") (citations omitted).  As a result of "lumping" time, the "timekeeper fails to sustain [his]

burden of providing that [his] fees are reasonable."  In re Brous, 370 B.R. 563, 569 (Bankr.

S.D.N.Y. 2007).  70 B.R. at 576.  Consequently, courts will summarily disallow time for discrete

legal services merged together in a fee application.  See, e.g., Baker, 374 B.R. at 496 (deducting

20% from the requested fees for improper block billing); In re M. Fabrikant & Sons, Inc., Case

No. 06-12737 (SMB) (Bankr. S.D.N.Y. Jan. 13, 2009) (Memorandum Decision Regarding

Applications for Professional Fees and Reimbursement of Expenses) (Docket No. 926) (allowing

only 30 minutes for each "lumped" entry, irrespective of the aggregate time billed for that entry);

CCT, 2010 WL 3386947at *7 (allowing only 30 minutes of time for lumped entries).

## 2.    Vague Time Entries

In addition, time entries may not be vague.  See Baker, 374 B.R. at 495 ("The records

must be detailed enough to enable a Court to determine whether the attorneys are claiming

compensation for hours that are 'redundant, excessive, or otherwise unnecessary.'"); see also In

re Bennett Funding Group, 213 B.R. at 244 ("In cases where the time entry is too vague or

insufficient to allow for a fair evaluation of the work done and the reasonableness and necessity

for such work, the court should disallow compensation for such services.").  Such vague entries

"make a fair evaluation of the work done and the reasonableness and necessity for the work

extremely difficult, if not impossible."  In re Hudson, 364 B.R. 875, 880 (Bankr. N.D.N.Y.

2007).  "Entries that contain such vague characterization of the services performed as 'meeting

with,' 'conversations with,' 'review materials or docket,' and 'draft correspondence to' fail to adequately describe the services provided and are routinely disallowed." <u>In re Hirsch</u>, No. 02-17966, 2008 WL 5234057, at *7 (Bankr. E.D.N.Y. Dec. 11, 2009).

      **3.**        **Preparation of Monthly Fee Statements and Fee Objection Response**

Although the appropriateness of compensation for the preparation of a fee application is recognized implicitly in Section 330(a)(6) of the Bankruptcy Code, the Bankruptcy Code does not give professionals *carte blanche* to charge debtors' estates for unreasonable fees to prepare fee applications. As the bankruptcy court in <u>In re Computer Learning Ctrs., Inc.</u>, 285 B.R. 191, 219-220 (Bankr. E.D. Va. 2002) held:

> [T]his does not mean that every aspect of preparing a fee application is compensable. <u>In re CF & I Fabricators of Utah, Inc.</u>, 131 B.R. 474, 483-88 (Bankr. D. Utah 1991) The Court carefully reviews the billing process and analyzes each aspect for purposes of compensation under 11 U.S.C. § 330. It holds that those portions of the billing process common to billing both bankruptcy clients and non-bankruptcy clients are not compensable under § 330 because they are part of the professional's overhead. They are not separately charged to non-bankruptcy clients and no additional effort is required to complete them for a bankruptcy client. For example, maintaining time records does not require additional effort. Lawyers and accountants maintain the same time records in a non-bankruptcy matter as in bankruptcy matters. Nor do lawyers or accountants charge for preparing their bills. Bills must be prepared in non-bankruptcy matters as well as bankruptcy matters. There may be some additional effort in putting the time records into the format required by the court. For example, the court requires time records to be maintained chronologically by task. While this may sometimes differ from the format of a non-bankruptcy bill, the additional effort is not generally significant if the records are initially properly set-up. Time records are almost universally maintained on computers with software that shows multiple formats, one of which will usually satisfy the bankruptcy requirements. A computer billing package used by a professional that does not retrieve information in a format compatible with bankruptcy requirements and requires revisions to rectify the inadequacies, is not a deficiency the estate should pay for. This is

> especially true for professionals who regularly practice in this
> court and regularly prepare fee applications.  Only those aspects of
> preparing a bankruptcy fee application that require additional-not
> merely different-efforts are compensable under § 330(a)(6).

See also CCT, 2010 WL 3386947, at *9 ("[T]he review and editing of time records – as opposed

to fee applications – is not compensable.  Outside of bankruptcy, lawyers presumably do not

charge their clients for preparing time records.").  Similarly, professionals should not be

compensated for responding to inquiries or objections from the United States Trustee regarding

professional fees.  See, e.g., St. Rita's Assocs. Private Placement, L.P., 260 B.R. 650, 651–52

(Bankr. W.D.N.Y. 2001) (holding that time incurred in defending fee requests is non-

compensable); see also Fibermark, 349 B.R. at 398 (noting that time spent defending a fee

application that does not conform to Section 330, Fed. Bankr. P. 2016, the UST Guidelines, or

pertinent case law is not compensable).

### 4.    Cost Effective Management of Representation

Professionals should endeavor to apportion work among lower rate associates and

paralegals.  See In re S.T.N. Enterprises, Inc., 70 B.R. 823, 842 (Bankr. D. Vt. 1987) (court will

reduce a partner's rate to associate's rate if work for which the partner is billing falls within

scope of associate's presumed expertise); In re Pothoven, 84 B.R. 579, 585 (Bankr. S.D. Ia.

1988) (a senior partner rates should be charged only for work that warrants the attention of a

senior partner.  Work done by a senior partner that a beginning associate or paralegal could do

will be compensated at a lower rate).

### B.    Actual and Necessary Expenses

Under Section 330(a)(1)(B) of the Bankruptcy Code, only documented expenses that are

actual and necessary are reimbursable.  11 U.S.C. § 330(a)(1)(B).  Professionals must "furnish

enough specificity for the Court to establish whether a given expense was both actual and

necessary." In re Korea Chosun Daily Times, Inc., 337 B.R. 758, 769 (Bankr. E.D.N.Y. 2005)

(quoting In re S.T.N. Enters., Inc., 70 B.R. 823, 834 (Bankr. D. Vt. 1987)).  Expenses are

"actual" if they are incurred and not based on a formula or pro rata calculation.  Bennett

Funding, 213 B.R. at 398.  Expenses are "necessary" if they were "reasonably needed to

accomplish proper representation of the client."  In re American Preferred Prescription, Inc., 218

B.R. 680, 686-87 (Bankr. E.D.N.Y. 1998).

Pursuant to the EDNY Guidelines, the following factors are relevant to a determination of

the propriety of an expense:

(i) Whether the expense is reasonable and economical.

(ii) Whether the requested expenses are customarily charged to non-bankruptcy clients of the applicant.

(iii) Whether the applicant has provided a detailed itemization of all expenses including the date incurred, description of expense (e.g., type of travel, type of fare, rate, destination), method of computation, and, where relevant, the name of the person incurring the expense and purpose of the expense. Itemized expenses should be identified by their nature (e.g., long distance telephone, copy costs, messengers, computer research, airline travel, etc.) and by the month incurred.  Unusual items require more detailed explanations  and should be allocated, where practicable, to specific projects.

(iv) Whether the applicant has prorated expenses where appropriate between the estate and other cases (e.g., travel expenses applicable to more than one case) and has adequately explained the basis for any such proration.

(v) Whether expenses incurred by the applicant to third parties are limited to the actual amounts billed to, or paid by, the applicant on behalf of the estate.

(vi) Whether applicant can demonstrate that the amount requested for expenses incurred in-house reflect the actual cost of such expenses to the applicant, or the actual cost cannot easily be determined.

(vii) Whether the expenses appear to be in the nature of nonreimbursable overhead. Overhead consists of all continuous administrative or general costs incident to the operation of the applicant's office and not particularly attributable to an individual client or case.  Overhead includes, but is not limited to: word processing, proofreading, administrative and other clerical services; rent, utilities, office equipment and furnishings; insurance; taxes; local telephones; and monthly car phone and cellular phone charges;

lighting, heating and cooling; and library and publication charges.

(viii) Whether applicant has adhered to allowable rates for expenses as fixed by local rule or order of the Court.

General Order 613, ¶ A(5).  With regard to meal expenses, the EDNY Guidelines provide that, "the expense for an individual's meal may not exceed $20.00."  General Order 613, ¶ F(3)(ii).

### C.    Certification

Pursuant to General Order 613, fee applications must include a certification from a "Certifying Professional" that:

(a) the Certifying Professional has read the application; (b) to the best of the Certifying Professional's knowledge, information and belief formed after reasonable inquiry, the fees and disbursements sought fall within these Amended Guidelines, except as specifically noted in the certification and described in the fee application; (c) except to the extent that fees or disbursements are prohibited by these Amended Guidelines, the fees and disbursements sought are billed at rates and in accordance with practices customarily employed by the applicant and generally accepted by the applicant's clients; and (d) in providing a reimbursable service, the applicant does not make a profit on the service, whether the service is performed by the applicant in-house or through a third party.

General Order 613 at B(1).

## V.    OBJECTION

### A.    WF&G

#### 1.    Fees

By its application (the "Final WF&G Application"), WF&G seeks allowance and payment of fees in the amount of $5,338,744.50.  ECF Doc. No. 1249, at 25.  In the Interim Fee Objections, the United States Trustee objected to an aggregate of $286,050.50 of WF&G's fees.  ECF Doc. Nos. 449, 746 and 951.  In addition to those objections, the United States Trustee now objects to an additional $81,188.75 in fees for the time period between November 1, 2013 and the Effective Date, resulting in a total fee objection of $367,239.25.

### a.    Vague Entries

Section 330 requires that fee applications, "standing alone . . . contain sufficient detail" regarding the services performed by the applicants.  See Brous, 370 B.R. at 569.  Additionally, "[e]ntries concerning communications . . . should identify the parties and the nature of the communication," while "[e]ntries relating to conferences or hearings should identify the subject of the hearing, and explain, where appropriate, why more than one professional from the applicant participated."  Id. at 569-70.

The Third WF&G Application contains numerous time entries that are so vague that they render it impossible for a reviewer to determine what service was performed and whether such service benefitted the estates.  Copies of the vague entries in the Final WF&G Application, for the time period between February 1, 2014 and the Effective Date, are annexed hereto as Exhibit A (each vague entry is designated with a "V").  The fees billed by WF&G based upon vague time entries aggregate $7,192.00.   Because WF&G has failed, in these instances, to lay out the appropriate level of detail the EDNY and UST Guidelines require, WF&G's requested compensation should be reduced by $7,192.00.

### b.    Lumped Time Entries

Although the EDNY and UST Guidelines require that "multiple project services rendered on the same day should be listed in separate entries unless the aggregate daily time does not exceed one half hour," so-called "lumping" is permissible if an applicant "indicates parenthetically the amount of time spent on each activity."  Brous, 370 B.R. at 570.  Review of WF&G's time records reveals "lumped" entries and sub-entries which lack parenthetical breakdowns of the time expended.  Copies of the lumped entries in the Final WF&G Application, for the time period between February 1, 2014 and the Effective Date, are annexed

hereto as Exhibit B (each lumped entry is designated with a "L").  The services represented by these time entries aggregate $6,976.50.  Because WF&G has failed to prepare these entries in compliance with the UST Fee Guidelines, the Court should reduce the compensation supported by these time entries by fifty percent, or $3,488.25.  See In re Baker, 374 B.R. at 496 (reducing block billed fees by twenty percent, but noting that where block billing occurs, courts have reduced fees by anywhere from five percent to one hundred percent).

### c. Monthly Fee Statements and Fee Objection Response

WF&G seeks to bill the estate the sum of $20,508.50 for services related to preparation of monthly fee statements and responding to objections to fee applications for the time period between February 1, 2014 and the Effective Date.  See Ex. A (each entry is designated with an "F").  The United States Trustee objects to the allowance and payment of fees for the preparation of monthly fee statements because these services are overhead and thus are not compensable by the estate.  See CCT, 2010 WL 3386947, at *9 (reviewing and editing time records is not compensable).  In addition the United States Trustee objects to the allowance and payment of fees for responding to inquiries or objections from the United States Trustee regarding professional fees.  See, e.g., St. Rita's Assocs. Private Placement, L.P., 260 B.R. at 651–52 (holding that time incurred in defending fee requests is non-compensable); see also Fibermark, 349 B.R. at 398 (noting that time spent defending a fee application that does not conform to Section 330, Fed. Bankr. P. 2016, the UST Guidelines, or pertinent case law and is not compensable).

### d. Cost Effective Management of Representation

The United States Trustee objects to the compensation sought by WF&G related to the management of the case because it appears to have resulted in excessive costs to the estate.  For

the time period between February 1, 2014 and the Effective Date, time keeper A.J.L., who is

identified as a partner of the firm and the managing partner on this case, billed a total of

$784,333.00, comprising approximately half of the attorney fees billed by WF&G, at an hourly

rate of $1,130.00.  ECF Doc. No. 1249, Ex. D.  This timekeeper appears to have performed

services, in certain instances, that could have been performed by a lower rate attorney.  Had

WF&G apportioned the work performed by A.J.L. among lower rate attorneys, the cost to the

estate would have been significantly less and based upon the services performed, it appears that

the estate would have been adequately represented.  See In re S.T.N. Enterprises, Inc., 70 B.R. at

842 (court will reduce a partner's rate to associate's rate if work for which the partner is billing

falls within scope of associate's presumed expertise); In re Pothoven, 84 B.R.at 585 ("senior

partner rates should be charged only for work that warrants the attention of a senior partner.

Work done by a senior partner that a beginning associate or paralegal could do will be

compensated at a lower rate").  Although it is difficult to calculate the cost to the estate of

WF&G's failure to properly apportion assignments, the United States Trustee estimates that this

practice resulted in unnecessary and increased cost to the estate, for the time period between

February 1, 2014 and the Effective Date, of approximately $50,000.00.  In re Associated

Grocers, 137 B.R. at 420, ("Across the board reduction is appropriate expedient to correct for

excessive or duplicative hours.") (quoting In re General Oil Distributors, 51 B.R. at 802)).

      2.    **Expenses**

The Final WF&G Application seeks reimbursement of a total of $58,887.61 of out-of-

pocket expenses.   ECF Doc. No. 1249.  The United States Trustee has no objection to the

expenses requested by WF&G.

**B.    Cohn Reznick**

**1.    Fees**

By its application (the "Final CohnReznick Application"), CohnReznick seeks allowance and payment of fees in the amount of $2,980,358.50.  ECF Doc. No. 1267.  In the Interim Fee Objections, the United States Trustee objected to an aggregate of $218,947.00 of CohnReznick's fees.  ECF Doc. Nos. 449, 746 and 951.  In addition to those objections, the United States Trustee now objects to an additional $35,998.00 in fees for the time period between February 1, 2014 and the Effective Date, resulting in a total fee objection of $254,945.00.

**a.    Lumped Time Entries**

Although the EDNY and UST Guidelines require that "multiple project services rendered on the same day should be listed in separate entries unless the aggregate daily time does not exceed one half hour," so-called "lumping" is permissible if an applicant "indicates parenthetically the amount of time spent on each activity."  <u>Brous</u>, 370 B.R. at 570.  Review of CohnReznick's time records reveals "lumped" entries and sub-entries which lack parenthetical breakdowns of the time expended.  Copies of the lumped entries in the Final CohnReznick Application, for the time period between February 1, 2014 and the Effective Date, are annexed hereto as Exhibit B (each lumped entry is designated with a "L").  The services represented by these time entries aggregate $15,481.00.  Because CohnReznick has failed to prepare these entries in compliance with the UST Fee Guidelines, the Court should reduce the compensation supported by these time entries by fifty percent, or $7,740.50.  <u>See</u> <u>In re Baker</u>, 374 B.R. at 496 (reducing block billed fees by twenty percent, but noting that where block billing occurs, courts have reduced fees by anywhere from five percent to one hundred percent).

### b.    Vague Entries

The Final CohnReznick Application contains numerous time entries that are so vague that they render it impossible for a reviewer to determine what service was performed and whether such service benefitted the estate.  Copies of the vague entries in the Final CohnReznick Application, for the time period between February 1, 2014 and the Effective Date, are annexed hereto as Exhibit B (each vague entry is designated with a "V").  The fees billed by CohnReznick based upon vague time entries aggregate $19,457.50.  See Ex. B.  Because CohnReznick has failed, in these instances, to lay out the appropriate level of detail the UST Fee Guidelines require, CohnReznick's requested compensation should be reduced $19,457.50.

### c.    Monthly Fee Statements and Fee Objection Response

CohnReznick seeks to bill the estate the sum of $8,800.00 for services related to preparation of monthly fee statements and responding to objections to fee applications during the time period between February 1, 2014 and the Effective Date.  See Ex. B (each entry is designated with an "F").  The United States Trustee objects to the allowance and payment of fees for the preparation of monthly fee statements because these services are overhead and thus are not compensable by the estate.  See CCT, 2010 WL 3386947, at *9 (reviewing and editing time records is not compensable).  In addition, the United States Trustee objects to the allowance and payment of fees for responding to inquiries or objections from the United States Trustee regarding professional fees.  See, e.g., St. Rita's Assocs. Private Placement, L.P., 260 B.R. at 651–52 (holding that time incurred in defending fee requests is non-compensable); see also Fibermark, 349 B.R. at 398 (noting that time spent defending a fee application that does not conform to Section 330, Fed. Bankr. P. 2016, the UST Guidelines, or pertinent case law and is not compensable).

### 2. Expenses

The Final CohnReznick Application seeks reimbursement of a total of $16,748.42 in out-of-pocket expenses. ECF Doc. No. 1267. In the Interim Fee Objections, the United States Trustee objected to an aggregate of $6,917.78 of CohnReznick's expenses. ECF Doc. Nos. 449 and 951. In addition to those objections, the United States Trustee now objects to an additional $497.47, resulting in a total expense objection of $7,415.25. This $497.47 in expenses relates to meals for the time period between February 1, 2014 and the Effective Date. ECF Doc. No. 1267. As it appears that in several instances, expenses for individual meals exceeded $20.00, the United States Trustee requests that CohnReznick reduce all meal expenses that fail to comply with the EDNY and UST Guidelines limiting individual meal expenses to $20.00. See General Order 613, ¶ F(3)(ii). In the absence of such action, the United States Trustee requests that the Court reduce CohnReznick's meal expense reimbursement by $497.47.

### C. Nixon Peabody

### 1. Fees

By its application (the "Final Nixon Peabody Application"), Nixon Peabody seeks allowance and payment of fees in the amount of $453,503.50. ECF Doc. No. 1250. In the Interim Fee Objections, the United States Trustee objected to an aggregate of $22,323.99 of Nixon Peabody's fees. ECF Doc. Nos. 449, 746 and 951. Of that total, $17,228.00 was resolved with a voluntary reduction of $11,560.00, which is reflected in the amount sought in this Final Nixon Peabody Application, resulting in remaining objections of $5,095.99. ECF Doc. No. 1231.

In addition, the United States Trustee now objects to an additional $4,408.50 in fees for the time period between February 1, 2014 and the Effective Date, resulting in a total outstanding

objection of $9,504.49.  The $4,408.50 for the time period between February 1, 2014 and the

Effective Date was billed for services related to preparation of monthly fee statements and

responding to objections to fee applications.  See Ex. C (each entry is designated with an "F").

The United States Trustee objects to the allowance and payment of fees for the preparation of

monthly fee statements because these services are overhead and thus are not compensable by the

estate.  See CCT, 2010 WL 3386947, at *9 (reviewing and editing time records is not

compensable).  In addition, the United States Trustee objects to the allowance and payment of

fees for responding to inquiries or objections from the United States Trustee regarding

professional fees.  See, e.g., St. Rita's Assocs. Private Placement, L.P., 260 B.R. at 651–52

(holding that time incurred in defending fee requests is non-compensable); see also Fibermark,

349 B.R. at 398 (noting that time spent defending a fee application that does not conform to

Section 330, Fed. Bankr. P. 2016, the UST Guidelines, or pertinent case law and is not

compensable).

### 2.    Expenses

The Final Nixon Peabody Application seeks reimbursement of a total of $2,886.24 of

out-of-pocket expenses.   ECF Doc. No. 1250.  The United States Trustee has no objection to the

expenses requested by Nixon Peabody.

### D.    GW

### 1.    Fees

By its application (the "Final GW Application"), GW seeks allowance and payment of

fees in the amount of $410,767.00.  ECF Doc. No. 1240.  In the Interim Fee Objections, the

United States Trustee objected to an aggregate of $5,117.55 of GW's fees.  ECF Doc. No. 951.

In addition to those objections, the United States Trustee now objects to an additional $813.00 in

fees for the time period between February 1, 2014 and the Effective Date, resulting in a total fee objection of $5,930.55.

GW seeks to bill the estate the sum of $813.00, for the period between February 1, 2014 and the Effective Date, for services related to preparation of monthly fee statements and responding to objections to fee applications. See Ex. D (each entry is designated with an "F"). The United States Trustee objects to the allowance and payment of fees for the preparation of monthly fee statements because these services are overhead and thus are not compensable by the estate. See CCT, 2010 WL 3386947, at *9 (reviewing and editing time records is not compensable). In addition, the United States Trustee objects to the allowance and payment of fees for responding to inquiries or objections from the United States Trustee regarding professional fees. See, e.g., St. Rita's Assocs. Private Placement, L.P., 260 B.R. at 651–52 (holding that time incurred in defending fee requests is non-compensable); see also Fibermark, 349 B.R. at 398 (noting that time spent defending a fee application that does not conform to Section 330, Fed. Bankr. P. 2016, the UST Guidelines, or pertinent case law and is not compensable).

## 2. Expenses

The Final GW Application seeks reimbursement of a total of $1,444.42 of out-of-pocket expenses. ECF Doc. No. 1240. The United States Trustee has no objection to the expenses requested by GW.

## E. E&Y

### 1. Fees

By its application (the "Final E&Y Application"), E&Y seeks allowance and payment of fees in the amount of $369,539.50. ECF Doc. No. 1242. In the Interim Fee Objections, the

United States Trustee objected to an aggregate of $7,124.00 of E&Y's fees.  ECF Doc. No. 951.

That objection was resolved with an aggregate voluntary reduction of $4,452.00, which is

reflected in the amount sought in this Final E&Y Application.  ECF Doc. No. 1242.

The United States Trustee now objects to an additional $936.00 in fees for the time

period between February 1, 2014 and the Effective Date.  This $936.00 was billed for services

related to preparation of monthly fee statements.  See Ex. E (each entry is designated with an

"F").  The United States Trustee objects to the allowance and payment of fees for the preparation

of monthly fee statements because these services are overhead and thus are not compensable by

the estate.  See CCT, 2010 WL 3386947, at *9 (reviewing and editing time records is not

compensable).

### 2.    Expenses

The Final E&Y Fee Application seeks reimbursement of a total of $2,378.00 of out-of-

pocket expenses.   ECF Doc. No. 1242.  The United States Trustee has no objection to the

expenses requested by E&Y.

### F.    Donlin Recano

#### 1.    Fees

By its application (the "Final Donlin Recano Application"), Donlin Recano seeks

allowance and payment of fees in the amount of $35,622.50.  ECF Doc. No. 1234.  The United

States Trustee has no objection to the fees requested by Donlin Recano.

### 2.    Expenses

The Final Donlin Recano Application seeks reimbursement of a total of $1,795.30 of out-

of-pocket expenses.   Id.  The United States Trustee has no objection to the expenses requested

by Donlin Recano.

### G.    A&B

#### 1.    Fees

By its application (the "Final A&B Application"), A&B seeks allowance and payment of fees in the amount of $1,694,757.50.  ECF Doc. No. 1244.  In the Interim Fee Objections, the United States Trustee objected to an aggregate of $62,623.25 of A&B's fees.  ECF Doc. Nos. 449, 746 and 951.  In addition to those objections, the United States Trustee now objects to an additional $8,034.00 in fees for the time period between February 1, 2014 and the Effective Date, resulting in a total fee objection of $70,657.25.

The Final A&B Application contains numerous time entries, for the time period between February 1, 2014 and the Effective Date, that are so vague that they render it impossible for a reviewer to determine what service was performed and whether such service benefitted the estate.  Copies of the vague entries in the Final A&B Application, for the time period between February 1, 2014 and the Effective Date, are annexed hereto as Exhibit F (each vague entry is designated with a "V").  The fees billed by A&B based upon vague time entries aggregate $8,034.00.  See Ex. F.  Because A&B has failed, in these instances, to lay out the appropriate level of detail the UST Fee Guidelines require, A&B's requested compensation should be reduced $8,034.00.

#### 2.    Expenses

The Final A&B Fee Application seeks reimbursement of a total of $37,416.56 of out-of-pocket expenses.  ECF Doc. No. 1244.  The United States Trustee has no objection to the expenses requested by A&B.

**H.    CBIZ**

**1.    Fees**

By its application (the "Final CBIZ Application"), CBIZ seeks allowance and payment of fees in the amount of $754,678.00.  ECF Doc. No. 1245.  In the Interim Fee Objections, the United States Trustee objected to an aggregate of $22,622.75 of CBIZ's fees.  ECF Doc. Nos. 449, 746 and 951.  Of that total, $9,025.25 was resolved with a voluntary reduction of $5,871.00, which is reflected in the amount sought in this Final CBIZ Application, resulting in remaining objections of $13,597.50.  ECF Doc. No. 1245.

In addition, the United States Trustee now objects to an additional $3,209.75 in fees for the time period between February 1, 2014 and the Effective Date, resulting in a total objection of $16,807.25.  Although the EDNY and UST Guidelines require that "multiple project services rendered on the same day should be listed in separate entries unless the aggregate daily time does not exceed one half hour," so-called "lumping" is permissible if an applicant "indicates parenthetically the amount of time spent on each activity."  Brous, 370 B.R. at 570.  Review of CBIZ's time records reveals "lumped" entries and sub-entries which lack parenthetical breakdowns of the time expended.  Copies of the lumped entries in the Final CBIZ Application, for the time period between February 1, 2014 and the Effective Date, are annexed hereto as Exhibit G (each lumped entry is designated with a "L").  The services represented by these time entries aggregate $6,650.00.  Because CBIZ has failed to prepare these entries in compliance with the UST Fee Guidelines, the Court should reduce the compensation supported by these time entries by fifty percent, or $3,325.00.  See In re Baker, 374 B.R. at 496 (reducing block billed fees by twenty percent, but noting that where block billing occurs, courts have reduced fees by anywhere from five percent to one hundred percent).

### 2.    Expenses

The Final CBIZ Application seeks reimbursement of a total of $141.91 of out-of-pocket expenses.  ECF Doc. No. 1245.  The United States Trustee has no objection at this time to the expenses requested by CBIZ.

## I.    Huebscher

### 1.    Fees

By its application (the "Final Huebscher Application"), Huebscher seeks allowance and payment of fees in the amount of $284,843.25.  ECF Doc. No. 1235.  In the Interim Fee Objections, the United States Trustee objected to an aggregate of $11,695.00 of Huebscher's fees.  ECF Doc. Nos. 746 and 951.

In addition to those objections, the United States Trustee now objects to an additional $2,090.00 in fees for the time period between February 1, 2014 and the Effective Date, resulting in a total fee objection of $13,785.00.   This $2,090.00 in fees is for services related to preparation of monthly fee statements and responding to objections to fee applications.  See Ex. H (each entry is designated with an "F").  The United States Trustee objects to the allowance and payment of fees for the preparation of monthly fee statements because these services are overhead and thus are not compensable by the estate.  See CCT, 2010 WL 3386947, at *9 (reviewing and editing time records is not compensable).  In addition, the United States Trustee objects to the allowance and payment of fees for responding to inquiries or objections from the United States Trustee regarding professional fees.  See, e.g., St. Rita's Assocs. Private Placement, L.P., 260 B.R. at 651–52 (holding that time incurred in defending fee requests is non-compensable); see also Fibermark, 349 B.R. at 398 (noting that time spent defending a fee

application that does not conform to Section 330, Fed. Bankr. P. 2016, the UST Guidelines, or pertinent case law and is not compensable).

### 2.   Expenses

The Final Heubscher Application seeks reimbursement of a total of $6,292.72 of out-of-pocket expenses.   ECF Doc. No. 1235.  In the Interim Fee Objections, the United States Trustee objected to certain of Huebscher's expenses.  ECF Doc. Nos. 449, 746 and 951.  Those objections were resolved with an aggregate voluntary reduction of $1,125.00, which is reflected in the amount of expenses sought in this Final Huebscher Application.  ECF Doc. No. 1235.  The United States Trustee has no objection to the expenses requested by Huebscher.

### J.   Diconza Traurig

### 1.   Fees

By its application (the "Final DTK Application"), DTK seeks allowance and payment of fees in the amount of $97,717.25.  ECF Doc. No. 1231.  In the Interim Fee Objections, the United States Trustee objected to an aggregate of $2,010.00 of DTK's fees.  ECF Doc. Nos. 449, 746 and 951.  Of that total, $986.50 was resolved with a voluntary reduction of $493.25, and this reduction is reflected in the amount sought in this Final DTK Application, resulting in $1,023.50 remaining.  ECF Doc. No. 1231.

In addition to those objections, the United States Trustee now objects to an additional $890.00 in fees for the time period between February 1, 2014 and the Effective Date, resulting in a total fee objection of $1,913.50.  This $890.00 in fees is for services related to preparation of monthly fee statements.  See Ex. I (each entry is designated with an "F").  The United States Trustee objects to the allowance and payment of fees for the preparation of monthly fee

statements because these services are overhead and thus are not compensable by the estate.  <u>See</u>

CCT, 2010 WL 3386947, at *9 (reviewing and editing time records is not compensable).

### 2.    Expenses

The Final DTK Application seeks reimbursement of a total of $3,460.35 of out-of-pocket

expenses.  ECF Doc. No. 1231.  The United States Trustee has no objection to the expenses

requested by DTK.

## VI.    CONCLUSION

WHEREFORE, the United States Trustee respectfully requests that the Court enter an

Order reducing the fees and expenses that Professionals have requested as outlined herein and

granting such other relief as the Court deems just.

Dated: New York, New York
      September 15, 2014

                Respectfully submitted,

                WILLIAM K. HARRINGTON
                UNITED STATES TRUSTEE, REGION 2

                By:    <u>/s/ *William E. Curtin*</u>
                      William E. Curtin
                      Trial Attorney
                      201 Varick Street, Suite 1006
                      New York, New York 10014
                      Telephone: (212) 510-0500